**Stephan A. GORZ, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1909.**

Court of Appeals of Alaska.

Feb. 5, 1988.

Robert M. Beconovich, Fairbanks, for appellant.

James V. Gould, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Stephan A. Gorz and Raymond A. Monroe were jointly indicted for arson in the first degree, in violation of AS 11.46.400(2). Their cases were tried separately. Gorz was convicted after a jury trial. He appeals, arguing that insufficient evidence was presented to the grand jury to support his indictment, that his trial counsel was ineffective in failing to make an opening statement, and that the trial court erred in failing to grant a new trial based on juror

misconduct. We find that sufficient evidence was presented to justify Gorz's indictment and conclude that his trial counsel did not provide ineffective assistance. We believe, however, that a remand is necessary for resolution of the juror misconduct issue.[1]

## FACTS

In the early morning hours of April 19, 1986, a bomb exploded in the arctic entryway of a Fairbanks apartment building. The explosion extensively damaged the building and injured one of its occupants.

Police suspicion focused on Gorz and Monroe. Monroe had previously been a tenant in one of the rental units. He had been ejected by the landlord, Jean A. Peters, who owned the building and occupied one of its apartments. Some time after being evicted, Monroe returned to ask for some clothes he had left behind. Peters told him that she had no knowledge of his clothes. Monroe became angry and threatened to "get even." Monroe subsequently moved to the Salvation Army Shelter. While staying there, he told another resident that Peters had "ripped him off," and that he was going to "burn up her RV."

Monroe and Gorz were both staying at the Salvation Army Shelter in the spring of 1986. On April 17, Monroe left a note at the shelter for Gorz, telling Gorz to meet him. Shelter manager Elmer Eckle noticed that at approximately 3:00 p.m., about fifteen minutes after receiving the note, Gorz transferred some items from his duffel bag to his backpack. Gorz deposited the duffel bag in a trash can outside and left, carrying his backpack. Eckle thought he might be able to use the bag, so he took it out of the trash. Inside he found several packages containing a powder that he did not recognize. He left them behind. Eckle also saw a length of blasting fuse in the trash, alongside the duffel bag.

At about 9:30 that night, Monroe and Gorz visited with two friends, Roger Alexander and Ronald Baker, who had a room

<hr />

1. Gorz has also challenged his sentence, arguing that it is excessive. In light of our decision

remanding the case, we need not address the issue at the present time.

at the Alaska Motor Inn. Baker thought that Monroe or Gorz came with a pack.

Gorz and Monroe left the Alaska Motor Inn sometime around 11:00 p.m. The explosion occurred shortly after midnight. The apartment building where the explosion occurred was located about two blocks from the Alaska Motor Inn. The inn is situated between the apartment building and the downtown Fairbanks area. Approximately fifteen minutes after the blast, Tom Shelley, a desk clerk at the motor inn, saw Gorz and Monroe walking from the downtown area. Gorz and Monroe stopped and asked Shelley what was going on. At approximately 3:00 a.m., Gorz and Monroe paid a return visit to Alexander and Baker. During the visit, Monroe stated that he had caused the explosion.

Police investigating the explosion searched the trash can at the Salvation Army Shelter and found packages of black powder and igniters. Gorz's fingerprints were eventually identified on one of the packages of powder. The chemical composition of the powder was determined to be similar to that used in the bomb.

Fairbanks Police Officer Paul Keller interviewed Gorz, who initially claimed that he knew nothing of the explosion. Gorz later acknowledged that he had been walking near Jean Peters' apartment building at around midnight and heard the explosion. He admitted telling several people that he had been responsible for the blast. However, Gorz told Keller that he had just been joking when he made those statements.

### SUFFICIENCY OF EVIDENCE PRESENTED TO THE GRAND JURY

■ Gorz first argues that his indictment for first-degree arson should be dismissed because insufficient evidence was presented to the grand jury. He complains in effect that he was indicted upon mere proof of his friendship with Monroe.

However, while the evidence against Gorz was for the most part circumstantial, we find that it was clearly sufficient to persuade reasonable grand jurors that a conviction would be warranted. *Taggard*

*v. State*, 500 P.2d 238, 242 (Alaska 1972); Alaska Criminal Rule 6(q). The evidence presented to the grand jury showed more than Gorz's friendship and association with Monroe. It established his presence near the scene of the crime with Monroe both immediately before and after the explosion and his possession of chemicals similar in composition to those used in the commission of the crime. Moreover, the evidence established that Gorz admitted making statements acknowledging responsibility for the offense. Although he asserted that those statements were made in a joking manner, the grand jury was certainly not bound to accept this self-serving explanation. Finally, when questioned by the police, both Gorz and Monroe initially made false exculpatory statements, denying any knowledge of the explosion. Under these circumstances, the trial court did not err in denying Gorz's motion to dismiss the indictment.

### FAILURE TO MAKE AN OPENING STATEMENT

■ Gorz next claims that he received ineffective representation because of his trial counsel's failure to make an opening statement. Alaska Criminal Rule 27(a)(2)(ii) provides:

> If no statement of the defendant's case is made after the statement of the prosecution's case, then after the state has produced its evidence and presented its case in chief, the defendant, or his counsel, if he intends to produce evidence, shall state his defense, and may briefly state the evidence he expects to offer in support of it.

Gorz contends that this provision obligates defense counsel to make an opening statement to the jury and that his trial counsel's failure to comply with the rule amounted to ineffective assistance of counsel *per se.*

■ We decline to adopt Gorz's narrow interpretation of Rule 27. Initially, we note that, on its face, the rule does not require an opening statement by the defense. Rather, it requires only that the defendant or the defendant's counsel "state the defense." Beyond this requirement,

the rule leaves optional the decision whether to provide the jury with a summary of the evidence to be presented in support of the defense. Here, the notice of alibi provided by Gorz in advance of trial arguably met the requirement of Rule 27 that Gorz disclose his defense, since it seems likely that this requirement was meant to provide notice to the court and to the prosecution rather than to inform the jury of the defendant's intentions.

In any event, we are satisfied that, even if Rule 27 did require an opening statement to be made, the failure by Gorz's trial counsel to comply with that requirement would not automatically amount to ineffective assistance of counsel. We can conceive of numerous instances in which competent trial counsel might reasonably make a sound tactical decision to refrain from presenting an opening statement to the jury. In the present case, Gorz has offered nothing to show that his own trial counsel's decision was not strategic, or, if it was, that the strategy was, as a matter of fact, an unreasonable one. These are matters as to which Gorz bore the burden of proof. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Brown v. State,* 601 P.2d 221, 234 (Alaska 1979); *Hensel v. State,* 604 P.2d 222, 230–31 (Alaska 1979). Nor, for that matter, has Gorz made any substantial showing that the decision not to present an opening statement contributed to his conviction. *Risher v. State,* 523 P.2d 421, 425 (Alaska 1974).

We find no error in the trial court's refusal to grant a new trial based on ineffective assistance of counsel.

## JUROR MISCONDUCT

■ Gorz next argues that the court erred in denying his motion for a mistrial based on juror misconduct. Gorz's defense at trial was alibi. He relied on the testimony indicating that, within fifteen minutes of the explosion, he and Monroe were seen on foot at the Alaska Motor Inn—approximately two blocks from the damaged apartment building. Gorz's theory of defense stressed that, when seen, he and Monroe

were walking from the downtown area, the opposite direction from the location where the blast occurred. In response to this defense, the state argued that in the fifteen minutes following the explosion, Monroe and Gorz could easily have covered the short distance from the crime scene to the point where they were observed. Apart from establishing that the distance between the crime scene and the Alaska Motor Inn was approximately two blocks, however, the state presented no specific evidence to indicate the amount of time that it would take to cover the distance on foot.

At some time during a recess in the jury's deliberations, one member of the jury apparently decided to walk the distance between the crime scene and the Alaska Motor Inn in order to determine for herself the amount of time it would actually take. The following day, while the jury was on a short break, juror Douglas Clinton Simmons, Jr., overheard the juror who had taken the walk say to another juror that she had done so and that it had taken her about four or five minutes. After the jury had returned its verdict, Simmons reported overhearing this statement to Police Detective John Drews. Drews, in turn, reported the incident to the prosecuting attorney, who relayed the information to Gorz's counsel.

The substance of what Simmons told Drews is related in an affidavit filed by Gorz's trial counsel. The affidavit states, in relevant part:

3. A jury trial was held on July 28 through July 30. The jury deliberated from 3:19 p.m. on July 30 until approximately 9:00 p.m. that evening and reconvened at 9:00 a.m. on July 31 until 1:30 p.m. on that same day.

4. A verdict of guilty was received July 31, 1986 at approximately 1:30 p.m.

5. On August 1, 1986, Assistant District Attorney Pat Doogan contacted me regarding a conversation John Drews, a Fairbanks Police Department Detective, had with Douglas Simmons, a juror in the Gorz trial.

6. Simmons informed Drews at the trial's conclusion that the jury was dead-

locked 10–2 for conviction on July 30, 1986 at 9:00 p.m. A juror, unidentified at this point, who was apparently one of two jurors either voting for acquittal or undecided, walked to the scene of the explosion and timed a walk from there to the Alaska Motor Inn. This occurred during deliberations on the 31st of July.

7. Simmons apparently stated to Drews that the juror returned to the jury room and subsequently changed his/her position. It is unclear whether this juror affected the other juror who was also undecided or voting for acquittal.

8. Assistant District Attorney Pat Doogan believes that the two jurors seated as numbers 3 and 7 in the jury box were the jurors involved.[2]

Gorz's motion for a mistrial was based on this information. In his motion, Gorz requested a hearing and specifically asked for an opportunity to subpoena and question all members of the jury. An evidentiary hearing was subsequently held. At the outset, however, Gorz's trial counsel indicated that he had agreed with the prosecuting attorney to begin by calling Simmons; counsel contemplated that an additional hearing involving other jurors could be held if necessary after Simmons testified. According to Gorz's trial counsel, one of the two jurors who was actually involved in the questioned conversation had just had a baby the day before; the other was on a trip to Germany and would not return for two weeks.

In his testimony at the evidentiary hearing, Simmons was somewhat less specific than he had apparently been when he spoke with Detective Drews. Simmons acknowledged hearing a female juror make a statement implying that she had timed the distance between the scene of the explosion and the Alaska Motor Inn. The statement was made in the jury room on the second day of deliberations, during a short break in the actual deliberations on the case.

Simmons indicated that he was engaged in a conversation with another juror at the time, and did not focus his attention on the female juror's statement. He said that he did not recall the juror who made the statement and did not recall the exact statement itself. Although Simmons believed that the statement was made to another juror, he testified that this belief was an assumption based on hearing the statement rather than on actual observation.

Simmons was positive that no discussion of the individual juror's personal investigation ever occurred during the actual jury deliberations. However, he was far from certain in his ability to pinpoint when the juror actually timed the walking distance. At one point, Simmons indicated that he believed the juror had made the trip on her way home on the night between the first and second days' deliberations. At another point, however, Simmons indicated that the juror could have made the trip either during the first day of deliberations or during the night between the first and second days.

In context, it is apparent that Simmons did not know exactly when the test was conducted, and that he was merely speculating based on the fact that the conversation he had overheard occurred on the morning of the second day of deliberations:

Q: [W]hich day was that?

A: Well, ... the morning that I heard this conversation was the day that we gave out the verdict.

Q: Same day. So it was the day before that ...

---

**2.** The affidavit filed by Gorz's counsel is generally supported by an affidavit filed by prosecutor James P. Doogan, Jr. Doogan's affidavit provides, in relevant part:

    2. Shortly after the jury returned a guilty verdict against defendant, I was informed by Detective John Drews that he had, on his own volition, talked to juror Sims [sic] after verdict.

    3. Detective Drews told me that juror Sims [sic] stated that during deliberations one of the other jurors announced that she had made an independent trip to the scene of the explosion at 541 7th Avenue, and had walked from that location to the Alaska Motor Inn at 5th and Lacy Streets, and that this walk took only about two minutes. Sims [sic] further stated after some unspecified time of further deliberations, this juror and another juror who had previously voted to acquit, voted for conviction.

A: The evening before or the day before.

Q: Okay.

A: Sometime the day of the—in her process of going home or something she decided to just time that distance bec

. . .

Q: Okay. . . .

Simmons was also certain that the issue of Gorz's alibi defense had been resolved on the first day of deliberations. Simmons' testimony implied that the juror who conducted the test probably did so after the alibi issue had already been resolved, just to confirm her own decision. Again, however, it is clear in context that Simmons' testimony in this regard was based on surmise rather than on specific information:

Q: At any time during the deliberations on the case did this juror who made the statement discuss it with the other jurors during actual deliberations?

A: I did not know [specifically] which lady said this because at the time I was engaged in a conversation with another man. I just overheard it. My head was turned. I know it came from the other end of the table. We have 12 people in this room and at that time of a break, probably two or three conversations going on at once; people drinking coffee and going to the restroom, etc. The issues of evidence were deliberated on one at a time during the course of our deliberations. This particular item was covered the day before and there was not appointment by the jury to send anyone for this information. The lady that did this did so as a matter of curiosity probably in her walk going home or something. I don't think as—the way the drift of conversation went—I seem to remember that she just implied that she was in the area so she thought she would walk it out of curiosity. It was her own choosing to do so and, as I mentioned, that phase of the deliberation that evidence had been covered the day before and I think this is just an expression of her own to make comment that she had

satisfied her own curiosity, possibly after—it may have been a question for her. I do not know. I don't think so.

Simmons was not asked to testify concerning the manner in which the jury was divided when he overheard the challenged conversation. At the evidentiary hearing, however, the prosecuting attorney acknowledged that Simmons had told Detective Drews that the juror who made the statement and another juror had previously voted to acquit and changed their vote sometime after the statement was made, following further deliberations. Simmons was also unclear in his testimony as to the identity of the juror who made the statement and the juror to whom the statement was directed. However, the record provides no basis for questioning the accuracy of Simmons' tentative identification of the two jurors made to Detective Drews.

Gorz's trial counsel argued that a mistrial was warranted based on Simmons' testimony alone. He further argued, however, that in the event the court found Simmons' testimony insufficient to require a mistrial, he should be permitted the opportunity to examine the two jurors who had tentatively been identified by Simmons as being involved. Gorz's counsel requested that another hearing be set so that he could examine these two jurors.

The trial court rejected Gorz's request to call additional jurors and, based on Simmons' testimony, denied the motion for a mistrial. While the court found that one of the jurors had, in fact, personally timed the distance between the crime scene and the Alaska Motor Inn, it concluded that this was done after the jury had already deliberated on and decided the alibi issue. The court did not address the evidence indicating that the two involved jurors changed their votes after their conversation, nor did the court make any express finding as to whether the juror's conduct in timing the distance actually influenced her own final vote. The clear implication of the court's decision, however, is that the juror had already rejected the alibi defense and that

her own vote was not influenced by the test that she had conducted.

■ On appeal, Gorz contends that the trial court erred in its decision. The law governing this issue is well settled. Jurors have a duty to consider only the evidence presented in open court. Thus, a juror commits misconduct by conducting an unauthorized experiment and either personally relying on the results or communicating them to other members of the jury. Evidence that has not been subjected to the procedural safeguards of trial impinges on the constitutional rights to confrontation, cross-examination, and counsel. *Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–550, 13 L.Ed.2d 424 (1965). Not all acts of misconduct require reversal, however:

> Whether the verdict should be set aside and a new trial ordered rests in the sound discretion of the trial judge, but generally the verdict should stand unless the evidence clearly establishes a serious violation of the juror's duty and deprives a party of a fair trial.

*West v. State*, 409 P.2d 847, 852 (Alaska 1966); *Fickes v. Petrolane–Alaska Gas Service, Inc.*, 628 P.2d 908, 910 (Alaska 1981); *Wheeler v. State*, 659 P.2d 1241, 1256 (Alaska App. 1983).

■ As the state acknowledges on appeal, however, because the accused's constitutional rights are implicated, the ultimate issue in any case involving juror misconduct is whether it can be said beyond a reasonable doubt that the misconduct did not contribute to the verdict. *Gibson v. Clanon*, 633 F.2d 851, 854–55 (9th Cir. 1980); *Dyer v. State*, 168 Ind.App. 278, 342 N.E.2d 671, 674 (1976); *Barker v. State*, 95 Nev. 309, 594 P.2d 719, 721–22 (1979); *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967).

In the present case, we believe that the evidence presented below established a strong likelihood that a member of Gorz's jury committed misconduct by personally determining the amount of time it would take to walk from the scene of the explosion to the Alaska Motor Inn. This point is not seriously disputed by the state. Instead, the state's primary argument is that the misconduct was *de minimus* and had no effect on the jury's verdict.

In our view, however, the current record is inadequate to sustain the state's argument. Certainly, when juror Simmons' testimony at the evidentiary hearing is viewed in its most innocuous light, it is possible to conclude that the individual juror's breach of duty in this case had no effect on Gorz's verdict. If we assume that the juror who conducted the test in this case did so after the jury as a whole had unanimously rejected Gorz's alibi defense, that she conducted the test merely to reassure herself as to the validity of the decision that she had already made on that issue, and that she thereafter disclosed her conduct only in a passing comment to another member of the jury, then the misconduct hardly seems to be of sufficient magnitude to warrant reversal. *See Gafford v. State*, 440 P.2d 405, 419 (Alaska 1968).

The problem here is that Simmons' testimony, while clearly establishing the likelihood that some misconduct occurred, is far too conjectural to permit any definitive resolution of the timing and scope of the misconduct. Under these circumstances, the trial court's refusal to allow the testimony of the two jurors who were directly involved effectively precluded Gorz from attempting to establish that prejudice had occurred.

■ Once evidence has been presented to establish the likelihood of juror misconduct, a decision to disregard the misconduct as inconsequential should not be lightly or hastily made. Before the effects of misconduct may properly be deemed harmless, the court must permit an inquiry that is sufficient in scope to support an informed conclusion, beyond a reasonable doubt, that any misconduct did not contribute to the jury's verdict. *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir.1986).

We do not suggest that in all cases examination of the entire jury must be allowed upon a mere allegation of juror misconduct. The matter is largely one for the

sound discretion of the trial court. *West*, 409 P.2d at 852; *Fickes*, 628 P.2d at 910. We emphasize that, in the present case, Gorz clearly established the likelihood that one of his jurors acted improperly in gathering information on her own accord during the course of jury deliberations. That juror apparently revealed this information to another juror. Given these circumstances, we believe that the trial court abused its discretion in refusing, at a minimum, to allow Gorz to examine the jurors who were tentatively identified as being directly involved in the impropriety.

We conclude that a remand must be permitted to give Gorz the opportunity to present testimony from these two jurors. Beyond that, we leave it to the trial court's discretion to permit additional inquiry to the extent that the court may deem such inquiry necessary or appropriate to enable it to make a fully informed decision as to the nature and scope of any juror misconduct. We will retain jurisdiction pending resolution of the proceedings on remand.

The case is REMANDED.