## W. M. HOOVER V. THE STATE.

No. 10970.   Delivered June 8, 1927.

Rehearing denied October 19, 1927.

**1.—Murder—Continuance—Properly Refused.**

Where, on a trial for murder, appellant moved for a continuance on account of the absence of a witness who was not served with process, by whom he expected to prove threats, and in his motion for a new trial no showing was made that such witness had been located or that he would testify to the facts averred in the motion for a continuance, there was no error shown in refusing the continuance. See Art. 543 (6) C. C. P.; Russell v. State, 228 S. W. 949, and McCulley v. State, 280 S. W. 223.

**2.—Same—Evidence—Finding of Pistol—Surroundings of Homicide Properly Admitted.**

There was no error in admitting testimony of the finding of the pistol and cartridges, and the surroundings in the house where the homicide occurred, the search and seizure law not being involved in this discovery. See Cornelius on Search and Seizure, Sec. 12, p. 62; Esagee v. U. S., 262 U. S. 151, and other cases cited.

**3.—Same—Argument of Counsel—Not Improper.**

It was not improper in his argument for counsel for the state to compare this case to a Biblical narration, no assertion of any fact being presented in the argument.

**4.—Same—Selection of Jury—Exercising Peremptory Challenge—No Error Shown.**

Where appellant complains of being forced to exercise his peremptory challenges on several jurors, but does not show that by reason thereof any objectionable juror was forced on him, no error is shown.

**5.—Same—Evidence—Answer   Not   Responsive—Withdrawn—No   Error Shown.**

Where the husband of deceased testified, not directly responsive to the

question propounded, that appellant broke up his home, and the court promptly instructed the jury to disregard the answer, no error is shown.

**6.—Same—Misconduct of Jury—Not Established.**

Where appellant complains of the misconduct of the jury, in illustrating appellant's testimony with the pistol used in the homicide during their deliberations, and there was nothing to show that any new facts were introduced in this attempted scene, nothing improper is disclosed. See Puryear v. State, 98 S. W. 258.

**7.—Same—Deliberation of Jury—Nothing Improper Shown.**

Where appellant complains of the deliberations of the jury in their discussion of the testimony, and their deductions drawn from same. No error is discovered.

ON REHEARING.

**8.—Same—No Error Discovered.**

On rehearing a careful examination of our original opinion in the light of appellant's criticisms thereof fails to disclose any error and his motion for rehearing is overruled.

Appeal from the District Court of Wichita County. Tried below before the Hon. P. A. Martin, Judge.

Appeal from a conviction of murder, penalty life imprisonment in the penitentiary.

The opinion states the case.

*O. E. Nelson* and *John Rhea,* for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted of murder, and his punishment assessed at life imprisonment in the penitentiary.

The appellant was charged by indictment with murdering Katie Goodman by shooting her with a pistol on or about November 16, 1926. The record discloses that at the time of the homicide the deceased was married to H. H. Goodman and was living with him in the city of Wichita Falls, and that the appellant was also married. It appears that before appellant married he boarded in the Goodman home and there grew up between deceased and appellant a strong attachment, which continued up to the date of the homicide with the exception of short intervals during which they had slight misunderstandings. It also appears that prior to appellant's marriage he and deceased had an under-

standing to the effect that the latter would obtain a divorce from her husband and that they, deceased and appellant, would marry. The deceased afterwards became reconciled with her husband and appellant married a Miss Pratt. After appellant's marriage the deceased continued her attentions toward him with some degree of success, and made serious threats against appellant's wife.

It was the contention of the state that appellant sought the deceased and accompanied her to her home on the date of the homicide for the specific purpose of killing her and then committing suicide. Evidence was introduced to the effect that appellant and deceased were seen to enter the latter's residence, that immediately thereafter four or five pistol shots were heard, and that when the officers and other parties rushed to the house and entered the room they found Mrs. Goodman dead, with three or four bullet wounds on her person, and the appellant lying unconscious on the floor near deceased, with a bullet wound near his heart. Appellant's pistol was found on the floor five or six feet from the bodies.

The appellant testified that deceased had threatened his life and that of his wife, and also threatened that if he didn't turn his pistol over to her she would report him to the officers; and that because of such threats he delivered his pistol to her a few days before the homicide. He further testified that on the date of the homicide, when they reached the room where the killing occurred, deceased shot him without warning, whereupon he rushed to her, took the pistol from her possession, and shot her.

The record contains thirteen bills of exception.

Bill No. 1 complains of the refusal of the court to grant appellant's application for a continuance for the want of the testimony of one Confaliotis, by whom he expected to prove that while the witness lived in the city of Wichita Falls he had heard deceased, about a year prior to the homicide, rebuke and upbraid appellant and make threats against his life and that of his wife. The court, in qualifying this bill, states that the witness was subpoenaed but did not appear and testify. The bill discloses that the motion for continuance was presented on January 26, 1927, that the verdict was returned on January 30, 1927, and that the motion for new trial was overruled on February 9, 1927. There was nothing in the motion for new trial to show that the witness had been located, or that there was any probability of locating him, or that he would testify to the averments in the application for continuance. The trial judge, after overruling the application for continuance and after hearing all of the testimony in

the case, overruled the motion for new trial, and there is nothing in the record to show that he abused his discretion in so doing. Art. 543 (6) C. C. P. states in part:

"The truth of the first, or any subsequest application, as well as the merit of the ground set forth therein and its sufficiency, shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. If an application for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the application was of a material character, and that the facts set forth in said application were probably true, a new trial shall be granted," etc.

It will be seen from the above article that it is within the sound discretion of the trial court to grant or refuse the first or any subsequent application for continuance, and also that it is within his discretion to determine on motion for new trial the materiality of the testimony of the absent witness and the probable truth thereof. This being true, this court is not authorized to interfere with the ruling of the trial court in such matters unless from the entire record it is shown that the trial judge abused the discretion entrusted to him or acted arbitrarily in the matter. There is nothing in this bill of exception which would justify this court in reaching the conclusion that the trial judge abused his discretion or acted arbitrarily. For collation of authorities on this question see notes 33-35 under the above article in Vernon's C. C. P. Also see Russell v. State, 228 S. W. 949, and McCulley v. State, 280 S. W. 223.

In bill of exception No. 2 complaint is made to the refusal of the court, after the state had rested its case, to instruct a verdict of not guilty. There is no merit in this contention.

Bills 3, 4 and 5 complain of the action of the court in permitting the state to introduce evidence as to the finding of the pistol and empty cartridges in the house where the homicide occurred and what was observed there, it being contended that such evidence was illegally obtained, since the witnesses were not invited into the house and had no search warrant. The premises where the homicide occurred were not under the control or in the possession of appellant, and he is not in a position to invoke the provisions of the law relative to search and seizure. See Cornelius on Search and Seizure, section 12, page 62; Essgee Co. v. U. S., 262 U. S. 151, 67 L. Ed. 917; Dozier v. State, 289 S. W. 45, and McFarlan v. State, 292 S. W. 885.

In bill No. 6 complaint is made to the refusal of the court to grant appellant's motion to have deceased's baby removed

from inside the courtroom railing, appellant contending that its presence there was prejudicial to him. This bill, as presented, shows no error.

Bills 7, 8 and 9 complain of argument made by attorneys representing the state. It appears that attorneys for the state and appellant were comparing this case to the Biblical narration of Adam and Eve in the Garden of Eden, and an attorney for the state pictured appellant as like unto the serpent in the garden, and further stated that appellant, while boarding in the home of deceased and her husband, was like unto a worm eating into the heart of a woman. These bills, as presented, show no error.

Bills 10, 11 and 12 complain of the action of the court in refusing to sustain appellant's challenges for cause to the jurors therein named. These bills disclose that none of the jurors mentioned sat upon the jury, and it appears that appellant bases his complaint upon the fact that by reason of having to exhaust his peremptory challenges on these jurors, the last juror accepted proved to be one of the jurors who insisted that the highest penalty be assessed against appellant. There is nothing in these bills to show that this juror was objectionable to appellant when selected. These bills present no error.

In bill No. 13 complaint is made to the action of the court in permitting deceased's husband to answer, when asked by the District Attorney if he had ever had any trouble with appellant in his home, "No, sir, only he broke up my home." Appellant objected to this testimony because it was a conclusion upon the part of the witness, was not in response to the question, and was prejudicial, and appellant requested the court to instruct the jury not to consider same for any purpose. The court sustained appellant's contention and instructed the jury in accordance with his request. This bill presents no error.

The appellant insists that the court erred in refusing to grant him a new trial on account of the alleged misconduct of the jury. It appears that after the jury had retired to deliberate upon the verdict, one of their number was given the pistol that had been introduced in evidence and was told to represent appellant, while another juror represented deceased, and then the members of the jury worked out the details of the tragedy in accordance with appellant's testimony. The appellant contends that this was an experiment which was prejudicial to him. We are unable to agree with this contention. There is nothing in the testimony of the jurors, as given on the motion for new trial, showing that they did anything other than attempt to test

appellant's testimony by following it in working out the details of the homicide, and there is nothing to show that any new facts were introduced in this attempted scene. This bill shows no error. Puryear v. State, 98 S. W. 258.

Appellant also complains of further alleged misconduct on the part of the jury. It seems that appellant had testified that he obtained the pistol in question from his room in the Cherry Rooms or Denver Hotel and had delivered it to deceased in the lobby of the Kemp Hotel. During the deliberations of the jury, one of the jurors stated, in effect, that the Cherry Rooms or Denver Hotel, where appellant was rooming at the time, were places of bad repute, and that he did not believe the appellant delivered the pistol to deceased in the lobby of the Kemp Hotel. It is the contention of appellant that these statements made in discussing his testimony were very detrimental to him. We are unable to reach the conclusion that these statements could have been very detrimental to appellant, in view of the fact that he admitted upon the stand that he had been having sexual relations with deceased while she was married to H. H. Goodman.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We have again reviewed those complaints raised anew by appellant in his motion. We do not think the figurative language used in the argument of the State's Attorney comparing appellant to the worm who had eaten his way into the heart of a rose, or the serpent in the. Garden of Eden, or in the paradise or home of the deceased, presents any serious ground of complaint. The juries are composed of sensible men. They know that the defendant is not a worm. They know that he is not a serpent. They know that the scriptural illustrations and the inferences based thereon are not expected to be taken as literally true.

We are cited to no authorities, and know of none holding that the jurymen in their retirement and discussion of the testimony may not endeavor among themselves to arrive at an understanding of what the witnesses say by movements of their own bodies,

their own hands and feet, or by the use of articles which have been admitted in evidence and which are taken by the jury in its retirement. We have tried to analyze the testimony given by the jurors, upon the hearing of the motion for new trial, relating to the reputation of certain places named by witnesses on the trial, but find ourselves entirely unable to conclude that the discussion shows misconduct of the jury from which any injury resulted to the appellant.

The motion for rehearing will be overruled.          *Overruled.*