No. 12698

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

———————————

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

MAURICE LYMAN THOMPSON,

Defendant and Appellant.

———————————

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

For Appellant:

Lee Overfelt argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas J. Beers, Assistant Attorney General, appeared,
Helena, Montana
Richard W. Josephson, ~~County Attorney~~, Big Timber,
Montana
Conrad B. Fredricks argued, Big Timber, Montana

———————————

Submitted: May 22, 1974

Decided: JUL 15 1974

Filed: JUL 15 1974

*Thomas J. Kearney*
                    Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Maurice Lyman Thompson was convicted of second degree murder in a jury trial in the district court of Sweet Grass County. He appeals from the judgment of conviction and denial of his motion for a new trial.

Defendant shot and killed James VanderVoort with a revolver in broad daylight. The shooting occurred on the main street of Big Timber, Montana on September 4, 1971, at about 6:00 p.m. VanderVoort was killed alongside defendant's camper pickup which was parked diagonally near the entrance to Erv's Bar.

Defendant and VanderVoort had been drinking beer in the bar when they got into an argument. According to one witness defendant remarked, "I'll kill the [s.o.b.]. He will be dead in three minutes." The proprietor of the bar told defendant and VanderVoort if they were going to fight "to get the hell out" of the bar. They left with defendant in the lead and Vandervoort following.

The evidence is conflicting on events thereafter. In any event, at some point defendant got his .357 magnum revolver from the cab of his pickup camper and shot VanderVoort. VanderVoort fell to the ground alongside the left rear wheel of defendant's pickup camper and died on the spot.

Defendant was charged with first degree murder. The state contended throughout the trial that defendant committed an intentional and premeditated killing with malice.

Defendant claimed he accidentally shot VanderVoort while defending himself. He contended he drew his revolver in an attempt to scare off a physically superior aggressor; that Vander-Voort tried to get the gun away from him and a struggle ensued; and that during the course of the struggle, his revolver accidently discharged killing VanderVoort.

The principal conflict in the evidence was whether a struggle over the revolver actually occurred.

Eyewitness testimony was conflicting. The state produced an FBI firearms expert who testified that the muzzle of the gun was probably about 18 inches from VanderVoort when the revolver was fired. He testified that no powder or smoke residues were found on the sleeves of VanderVoort's shirt. On cross-examination, he admitted that no such residues would be deposited there if VanderVoort's hands were covering the cylinder of the revolver when it was fired. On redirect, he testified that he would expect to find powder and smoke residues from the muzzle on VanderVoort's shirt sleeve if the sleeve were within three to four inches of the muzzle.

Defendant testified that VanderVoort had both hands on the revolver at the time it was discharged during their struggle.

The state contended throughout that there was no struggle. It urged that if VanderVoort had grabbed the revolver by the barrel, smoke and powder residues would be present on his sleeve. If VanderVoort had grabbed the revolver by the cylinder, it would have prevented rotation and firing.

During final argument to the jury, the following transpired:

"[By the county attorney] Now Mr. Thompson testified that the gun was fired accidentally while they were wrestling over it while Mr. VanderVoort had ahold of it, substantially like this. Yet the pathologist did not testify as to any powder burns on the hand which was wrapped around the cylinder. He described small cuts in the evidence, small abrasions on the elbow, but no mention in the pathologist's testimony at all about powder burns on the hand. Now apparently from the pathologist's testimony, if you believed his testimony and it's uncontradicted, and it's a scientific fact, if you follow the path of the bullet we must assume at the time the gun went off it must have been held--I can't do it that way--but it must have been held something like that in relation to Mr. VanderVoort if he was gripping the gun in the manner Mr. Thompson testified.

"Now, the FBI agent testified that if the gun was held like that there is muzzle blast from here, smoke residues left here as the bullet leaves the gun. Yet there were no smoke residues found on the shirt by the FBI laboratory. Third, the FBI agent testified it was eighteen inches from the muzzle to the point of entrance. And my arms are fairly long but I can't quite get it away eighteen inches when I am holding it away like this. Lastly, when you get in the jury room, take this gun and ---

"THE COURT: They will not be permitted to take the gun to the jury room. I can't allow them to take the physical

evidence. There is a Montana case that says it's error to take that. You can take all paper exhibits but not the physical evidence.

"MR. FREDRICKS: [county attorney] Let's assume that I am Mr. VanderVoort engaged in a mortal struggle over this gun, and I am grasping it. Would you try to fire that gun, Mr. Anderson? [juror].

"MR. OVERFELT: [defendant's attorney] Object to this, this is a demonstration; assuming facts that are not in evidence. It is putting the jury in the position of participating in something that is not supported. We don't know the position the deceased was in nor exactly where he grabbed that weapon.

"THE COURT: You may use demonstration, but I don't want the jury to participate in any portion of it. You can make your comments and discussion.

"MR. FREDRICKS: They won't be allowed to take that in?

"THE COURT: I will hear arguments on that at the end of the case.

"MR. FREDRICKS: Now, let's go to some other aspects of Mr. Thompson's testimony. My point is here, ladies and gentlemen of the jury, that the physical evidence, the physical facts in this case, you take this gun and follow Mr. Thompson's testimony. The physical facts prove that his testimony is wrong and it didn't happen that way."
[Bracketed material added.]

During the course of its deliberations, the jury returned to the courtroom and requested (1) a readback of defendant's testimony from the time he left the bar to the time of the shooting, and (2) permission to examine the revolver. The examination was conducted in the presence of the court, the defendant, and attorneys for both the state and defendant.

Defendant's counsel objected:

"My objection is based on the fact that this jury is proceeding to conduct an experiment. It is obvious from watching them. They are trying to determine whether or not the trigger can be pulled when a hand is gripping the cylinder. There is no evidence in the record indicating either way whether or not the deceased was grabbing the gun by the cylinder thereby preventing the cylinder from rotating. The evidence only reveals that he was grabbing the barrel on the pistol somewhere. This constitutes an experiment on the part of the jury not based on facts in evidence before them, that could mislead, confuse and probably judging from the fact that they are asking for a readback on this point, asking for this critical testimony."

The county attorney responded:

"Mr. Overfelt's cross-examination of the FBI agent, he gripped the gun in such a manner. In addition, the

- 4 -

Defendant indicated on either his direct examination or cross-examination that this is how the gun was grabbed, that one hand was over the cylinder."

The jury returned a verdict finding defendant guilty of second degree murder. Defendant's motion for a new trial was denied.

Defendant seeks review of three issues:

(1) Was the hypothetical question asked the FBI firearms expert concerning powder and smoke residues from the muzzle of the revolver properly allowed?

(2) Was the state's final argument to the jury reversible error?

(3) Was the examination of the revolver by the jury reversible error?

Defendant contends the hypothetical question asked the FBI expert was speculative, without proper foundation, assumed facts not in evidence, and should not have been permitted.

The relevant redirect examination by the state discloses:

"Q. One thing I think I want clarified. That you get powder residue and burns from the side blast on the end of the muzzle too, is that correct.? A. That is correct.

"Q. So that if you were holding the gun like this and your shirt sleeves were within say three or four inches of the muzzle, you would be very likely--

"MR. OVERFELT: Your honor, this is objected to as assuming facts not in evidence in this case, and I object to this line of questioning.

"THE COURT: Overruled.

"MR. OVERFELT: It is speculative.

"MR. JOSEPHSON: I said if.

"MR. OVERFELT: That is what I mean, it is speculative. There is no evidence in the record to support this particular line of questioning.

"THE COURT: All right, I overruled the objection and you may proceed.

"Q. If a shirt sleeve was within three to four inches of the muzzle of this gun, would you expect to find powder residue on that shirt sleeve? A. I think you would expect to find some, yes.

"Q. And smoke residue? A. In that close a distance, yes.

- 5 -

"Q. And referring to your diagram again, [it] is what comes out when the bullet leaves the barrel? A. Yes." [Bracketed word added.]

The revolver and the shirt had been examined by the witness at the FBI laboratory. Both had been admitted in evidence. A photograph of the victim lying where he fell shows both sleeves of his shirt still fastened slightly above his wrists. This photograph had been admitted in evidence.

On direct examination the FBI expert testified in detail how smoke and powder residues escape when the revolver is fired and deposits residue on materials in close proximity. On cross-examination he indicated that if the revolver were grasped with the hand over the cylinder, the shirt would have no residues unless it was within "three to five or perhaps six inches along the side of it." The purpose of the redirect examination was to establish that residues escape from the muzzle as well as the cylinder area, so if the shirt sleeve were within a few inches of the muzzle, deposits would be left on the sleeve.

The propriety of a hypothetical question is largely within the discretion of the trial court whose ruling will not be disturbed in the absence of an abuse of discretion. State v. Bentley, 155 Mont. 383, 472 P.2d 864; State v. Noble, 142 Mont. 284, 384 P.2d 504. The purpose of a hypothetical question directed to an expert witness is to reduce the speculative nature of the facts to enable the jury to better understand the consequences. Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979. Here, alternative factual conclusions were possible under the evidence. VanderVoort either was gripping the revolver by the barrel, the cylinder, or both. Expert opinion evidence on residues under each factual alternative provides clarification and reduces speculation.

The hypothetical question was relevant to a fact in issue. The witness was qualified as a firearms expert; there was no objection to foundation in the trial court. It did not assume facts not in evidence; the witness testified on cross-examination concerning

deposits of residue if the revolver were gripped with a hand
over the cylinder. /Cf. Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044.
Any hypothetical question is speculative in the sense that it
assumes certain facts; the facts assumed here were within the scope
of the evidence. Accordingly, the hypothetical question was proper
and Judge Shanstrom did not abuse his discretion in permitting it.

Defendant contends the state's final argument invited the
jury to conduct an unauthorized experiment with the revolver outside
the evidence in the case. This claim stands or falls on whether the
jury accepted the invitation and conducted such unauthorized ex-
periment. This is the subject of defendant's final contention
discussed hereinafter. Aside from this, the court sustained the
objection of defendant's counsel and ruled the jury was not to
participate in any portion of the demonstration. The entire demon-
stration was dropped at this point. No prejudicial error resulted
from the argument or attempted demonstration by the county attorney
under such circumstances.

People v. Evans, 39 C.2d 242, 246 P.2d 636 and State v. Hogan,
100 Mont. 434, 49 P.2d 446, are distinguishable and do not support
defendant's position. Both cases involve bringing facts not in
evidence to the jury's attention in final argument. This is not
the situation here.


Defendant's principal contention is that the jury conducted
an improper experiment with the revolver during its deliberations.
Specifically, he contends that during jury examination of the
revolver in the presence of the court, the state, the defendant
and counsel for both parties, one juror held the cylinder while
another attempted to pull the trigger and this performance was
repeated by other jurors. Defendant charges jury misconduct con-
stituting reversible error.

Assuming, arguendo, that this occurred, we find nothing
objectionable in this procedure under the circumstances of this
case. Defendant testified that VanderVoort grabbed the revolver

with both hands and maintained his hold throughout the struggle

He demonstrated to the jury the manner in which VanderVoort gripped

the gun. He testified the pistol was not cocked. The FBI.firearms

expert, in response to questions by defendant's counsel, testified

about powder and smoke residue if the revolver were held with a

hand over the cylinder. The violent struggle over the revolver

portrayed by defendant at least implies a firm grip on the cylinder.

Whether the revolver could be fired under such circumstances amounts

to no more than testing the credibility of defendant and determining

the weight that should be given his testimony.

The distinction between prohibited experiment and permitted

critical examination of physical evidence is explained in the

following quotation from a similar case, Allen v. State, 141 Tex.

Cr.94, 146 S.W.2d 384,386:

> "* * * The pistol was examined and operated by
> some of the jurors---as stated by one, it was
> 'fanned'. Because of this it is contended that
> the jury experimented with the pistol and brought
> into the case new and additional evidence to that
> heard from the witness box.
>
> "The jury had a right to take the pistol into the
> room where they were deliberating. The evidence does
> not disclose what, if any, additional fact was dis-
> covered by the jury in handling the pistol to that
> which was shown by the testimony in the trial of the
> case. Probably it did contradict the evidence of the
> appellant to the effect that the pistol would hang at
> a certain place. The jury had a right to examine it
> to determine the truthfulness of that statement. It
> is a well-settled rule that the jury would have the
> privilege of examining a dangerous instrument
> provided they did not use it in any different manner than
> that involved in the testimony and that no new fact
> was discovered from their experiment which was hurtful
> to the appellant."

We find this analysis persuasive. It promotes a just result.

We adopt its rationale. In accord see: Andrews v. State, 15 Ohio

CC NS 241; 33 Ohio CC 564; Hoover v. State, 107 Tex.Cr. 600, 298

S.W. 438.

A jury is not required to don "blinders" when deliberating on

a verdict. Juries are permitted to take into the jury room any

exhibits deemed proper by the trial court. Section 95-1913(c),

R.C.M. 1947. Where, as here, the court permits the jury to examine

a revolver used in a killing, the jury may use this physical evidence in conjunction with testimony given on the witness stand in determining the credibility of witnesses and the weight to be given their testimony. A critical examination of the firing of the revolver under the circumstances disclosed by the defendant in his testimony is not only permissible but enlightened. In searching for the truth, a jury is permitted to use common sense unfettered by illogical restraints.

State v. Landry, 29 Mont. 218, 74 P. 418, does not support defendant's position here. It is distinguishable on both the facts and the law. It concerns a jury experiment outside the scope of the court's order and outside the evidence during a view of the premises under a special statute not involved in the instant case.

The following authorities from other jurisdictions are cited by defendant in opposition to the view we have expressed here: State v. Burke, 124 Wash. 632, 215 P. 31; Forehand v. State, 51 Ark. 553, 11 S.W. 766; Hansing v. Territory, 4 Okla. 443, 46 P. 509; 95 ALR2d 351. These authorities are neither binding nor persuasive in the context of the case before us. To the extent they are construed as prohibiting a searching examination of physical evidence under conditions disclosed by the evidence in the case, they are relics of a bygone age when a trial was a sporting contest at the expense of a search for the truth. They are anachronisms in Montana today under our modern code of criminal procedure.

The judgment of conviction is affirmed.

_____
Justice

We Concur:

_____

_____

_____
Justices.

- 9 -