**STATE of Texas, Appellant,**

v.

**Sandra Jo SCOTT, Appellee.**

**No. 12–90–00120–CR.**

Court of Appeals of Texas, Tyler.

June 28, 1991.

Discretionary Review Refused Oct. 16, 1991.

Michael Sandlin, Tyler, for appellant.

Duane Stephens, Tyler, for appellee.

COLLEY, Justice.

On March 14, 1990, a jury convicted appellee of arson, the intentional burning of her Jeep Cherokee (hereinafter sometimes called the "vehicle"). On March 30, 1990, the trial judge assessed appellee's punishment at seven years' confinement, but suspended imposition of sentence and placed appellee on probation for a period of seven years.

Appellee filed a timely motion and an amended motion for new trial. On April

---

12, 1990, the court orally granted Appellee's amended motion for new trial.[1]

The State argues one point of error, contending that the court "committed reversible error by granting Appellee's [amended] motion for new trial."

Appellee claims by one cross point, that the "trial court erred by failing to grant Appellee's motion for new trial on the ground that there was no evidence, or legally insufficient evidence to sustain the jury's verdict of guilty."

Appellee alleged two grounds in her amended motion for new trial, (1) that the evidence was insufficient to support her conviction, and (2) that she did not receive a "fair and impartial trial due to ... misconduct of the jury." Under her second contention, appellee claimed that a member of the jury "injected new evidence into the case...."

The State limits its appellate arguments to the contention that "[t]here was no other evidence received by the jury [during their deliberations] that was either adverse or detrimental to [appellee]."

Under the state of this record, we presume that the trial court's grant of the new trial was grounded solely on jury misconduct under Tex.R.App.P. 30(b) which, in part, reads:

> (b) *Grounds.* A new trial shall be granted an accused for the following reasons:
>
>> (7) Where after retiring to deliberate the jury has received other evidence;
>> ....
>
> ....

■ As the State points out, the trial court may grant a new trial in criminal cases where "other" evidence is "received" by the jury, and that evidence is harmful to the defendant. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Cr.App.1978); *Alexander v. State*, 610 S.W.2d 750, 752–53 (Tex.Cr.App.1980). However, the law is well settled that, if the court determining

that "other" evidence adverse to the defendant was received by the jury during its deliberations, that is, evidence or testimony not properly before the jury at trial, then the courts will not speculate on the probable effect of that evidence. *Alexander*, 610 S.W.2d at 753; *see also Garza v. State*, 630 S.W.2d 272, 274 (Tex.Cr.App.1981); *McGary v. State*, 658 S.W.2d 673, 674 (Tex. App.—Dallas 1983, pet. ref'd); and *Shivers v. State*, 756 S.W.2d 442, 444 (Tex.App.— Houston [1st Dist.] 1988, no pet.).

■ The gist of the State's argument is the assertion that the character of the jury testimony complained of amounts only to "a rehashing of the disputed evidence presented at trial." The State claims that juror Starkey's testimony was only a discussion of the expert electrical testimony at trial and that Starkey, an electrician, was merely explaining "how electricity worked." The State also argues that Starkey "basically *corroborated* the testimony of [the State's expert witness, Tim Willingham]." (Emphasis added.) Furthermore, the State alleges in its brief that the "character of the evidence received in the case at bar was almost identical to the evidence that was received during trial" and that such evidence was neither "adverse [n]or detrimental to [appellee]."

Appellee, quoting from *Rogers v. State*, 551 S.W.2d 369 (Tex.Cr.App.1977), argues that, since it is virtually undisputed that the jury received "other evidence," the order granting the new trial must stand "if the evidence was adverse to the defendant." *Rogers*, 551 S.W.2d at 370.

The record reveals that appellee, an employee of Bonar Packing Co., walked to and entered her vehicle during her lunch break. A State's eyewitness testified that while appellee was standing outside the vehicle with the driver's side door open, a flame shot upward in the front seat area, near the center of the vehicle. The fire was short lived and within minutes went out for lack of oxygen. In the meanwhile, appellee

---

**1.** The *written order* granting appellee's amended motion for new trial is not included in this record; but the transcript—docket sheets—recites that on April 17, 1990, the trial judge signed a written order granting appellee a new trial, and the parties appear to be in agreement that, in fact, a written order as required by Tex.R.App.P. 31(e)(3) exists.

shut the car door and walked back toward the company building.

Tim Willingham, a captain of the Tyler Fire Department and arson investigator, testified at trial that he examined the interior of the vehicle, found no flammable liquid residues and concluded that the small fire did not start because of an electrical accident or short. Willingham also opined that the fire was intentionally set. He stated that he found that "the location of [the origin of the] fire is inconsistent ... with any ... accidental cause that [he] normally attribute[s] to vehicles." Willingham said the fire was "an open flame fire that started fast and burned out fast." He said these facts indicate "an intentionally set fire."

Willingham admitted that he could not say "what actually caused the fire[,]" explaining that he did not know whether the fire was started by "a match or a lighter." The record shows that the plastic lens cover from a dome light in the front of the vehicle was partially burned and fell to the floorboard of the vehicle during the fire. Willingham testified, however, that there was no electrical wiring located at the point of origin of the fire. On cross-examination, he stated that there was no evidence of an electrical arc in the overhead dome light fixture, and that the headliner was clean and the dome light fixture was undamaged.

After the State rested, appellee called her expert witness, Jim McClenden, who was self-employed in the trim shop, auto upholstery and glass business and was qualified as an expert on electricity. He related that he had been employed by appellee's insurance carrier to repair the vehicle after the fire. McClenden described the wiring harness of the vehicle and testified that he had carefully examined it. He stated that he believed a metal screw holding the plastic molding on the vehicle's door post had "shorted the wiring harness out." He opined that, because of this electrical short, the dome light caught fire and ignited the fabric headliner on the roof of the vehicle.

The State recalled Willingham on rebuttal. Willingham gave expert testimony contradicting McClenden's testimony that an electrical short in the wiring harness of the vehicle had started the fire by shorting out. Willingham said, in effect, that if the screw had caused a short in the wiring, the current would have flowed back to the fuse box on the vehicle or to the '12–volt battery and would not have gone to the dome light fixture. Willingham repeated his earlier testimony indicating that he found no evidence of an electrical fire (arc) at the door post terminal.

At the hearing on the motion for new trial, several jurors testified that juror Douglas Starkey, an electrician with extensive experience, informed the jury that he had been an electrician for "twenty years or so." Juror Robert Witt testified that Starkey also told the jury during their deliberations that if the fire had been started by an electrical short, the "fuse would have blown." Joseph Eakin, another juror, affirmed that Starkey "explained how [the fire] could or could not have happened" based on his experience as an electrician. Eakin acknowledged specifically that Starkey testified that "he knew of his own knowledge how electricity worked...."

Lee Copeland, the foreman of the petit jury, also had some experience in wiring motor vehicles. He testified that from his "own experience the only thing that he has ever seen as far as a short is that when it shorts it shorts back to the source, not forward." In addition, Copeland said he informed the jury "that [he] had wired on several cars ..." and that, from his experience, he learned that the short "would ... [go] back to the battery...." Copeland also testified that Starkey told the jury that "in his experience as an electrician every electrical short he had ever seen shorts and goes back to the source." On cross-examination by the prosecutor, Copeland affirmed that the jury "discussed" the proposition that, when an electrical short occurs, "if it shorted out it would short back to the source...." Copeland also agreed that this was "exactly the testimony that ... Willingham gave in the courtroom...." (Emphasis added.)

Willie Tatum, another juror, stated that Starkey told the jury that "he had been in the electrical business over twenty years." Ms. Tatum also testified that Starkey told the jurors that the fire could not "have happened the way the defense said it did." She related that Starkey said "if it [the fire] had happened the way the defense presented it, all the wires would have melted."

The State also called juror Starkey to testify at the hearing on the motion for new trial. Starkey testified that he believes he mentioned to the jurors that he "had about twenty years experience as an electrician...." When asked by the prosecutor, "[D]id you ever talk about anything that was outside of what was testified to in Court?[,]" Starkey responded, "Not to my knowledge. You know, I just stated the facts as I knew them as they appeared to me." Starkey responded to further questioning, stating "I *corroborated* what Mr. Willingham said." (Emphasis added.) On cross-examination, Starkey was specifically asked, "Did you kind of [corroborate] Willingham's testimony with your own expert (opinion)?" Starkey reaffirmed his earlier statement, responding "Yes, I did." Starkey also said that he gave his own expert opinion to the jury "as far as it went, to the extent that [he] did agree with what the Fire Marshal said."

The State argues that juror Starkey did nothing more than "discuss" the same evidence produced by the testimony of State's witness, Willingham. We cannot agree. While it is clear that Willingham did testify concerning electrical shorts in the wiring harness of the vehicle, it is also abundantly plain that Starkey testified before the jury about the same evidence, but based on his *own experience,* and through his own words. Starkey gave a corroborative expert opinion in support of Willingham's expert testimony. Thus, the first prong of the test requiring that "other evidence" was received is established. *Alexander,* 610 S.W.2d at 752–753. The second prong of the test which mandates that the "other evidence" be adverse or harmful to appellee is also manifestly met by the evidence before us. *Id.* The critical issue for the

jury in this case was whether the fire was intentionally set or was the result of an electrical mishap. Starkey's testimony regarding the impossibility of an electrical fire which he based on his own expertise and experience, was surely adverse to appellee, as was the testimony of Copeland.

We therefore conclude that, under the record, the trial court did not abuse its discretion in granting the new trial. The State's point of error is overruled.

■ The last question for determination, raised in appellee's cross point, is whether the evidence was sufficient to support the appellee's conviction. The appellee argues under her cross point that because the State's expert witness, Willingham, found no flammable liquid residues or foreign substances in the vehicle and could not testify whether the fire was ignited by a match or a lighter, his opinion that the fire was "intentionally started" is unsupported by the evidence. Willingham based his opinion, in part, on the testimony of Don Dozzier, a foreman at Bonar Packaging. Dozzier testified that he was working in the front office of the plant on Sunday, November 1, 1987, the day of the fire. He affirmed that a window in the office "faces out to the parking lot ..." of the Bonar plant. He said that he saw appellee walking towards her car in the parking lot and concluded that she was going to get her lunch. Dozzier estimated that appellee was some sixty-five to seventy feet away from his point of observation. He then stated that appellee opened the car door, got in and sat down in the vehicle. He said she seated herself in the driver's seat and remained there for some two or three minutes. Dozzier remarked that the vehicle was facing him so that he viewed appellee through the front windshield of the vehicle. Upon further questioning, Dozzier stated that appellee "started fumbling between the bucket seats doing something." He said the appellee also "reach[ed] towards the glove compartment." Dozzier related that the appellee then "reached back down and kept fumbling around a little bit more ... and reached back the second time to the glove compartment." Dozzier said that appellee then "went back to the middle of the bucket seats and fumbled there a little

bit more." Dozzier continued his testimony by stating,

As she stepped out of the vehicle she was standing outside the door, she reached in and picked up a paper sack, a grocery-type sack and I figured it was her lunch, it appeared to have some kind of bottle or container in it, the way it looked. She picked the package out and at that moment I saw her getting the package, I noticed a—glimpsed a spark of fire flashed up in the windshield of the car.

Dozzier further testified that when he observed the "flash," appellant "was standing at the [car] door with it open, looking in." He stated that "the spark flashed up just a second and ... died back down." Dozzier stated that the appellee then closed the vehicle door and "started walking toward the front of the car."

In response to further questioning, Dozzier said that when appellant "got about even with the headlights ... all of a sudden there was a big flame of fire just shot up from the floorboard of the car between the bucket seats. It just roared up there ... all the way up to the top of the car." The witness stated that, about thirty seconds later, the fire "died down ... [and] black smoke started rolling up inside the car ... [and] covered the whole windshield...." Dozzier stated that he then ran to the parking lot where he saw the appellee and two other employees. He stated that when one of the employees opened the driver's side door of the vehicle, the "flame was out, it was smouldering, but the fire around it, the flame was out." Later during his testimony, the witness sponsored the introduction of several photographs of the front interior portion of the vehicle; he also testified that he saw a folded newspaper in an area between the seats, with a wig lying on top of it. He stated that "there was a towel that was folded in a round circle, like, on top of the paper and wig." Dozzier added that the wig and paper were burned and that the towel was burned and "smouldering."

The primary defense presented by appellee was that the fire was ignited by an electrical short in the wiring harness of the vehicle. According to appellee's expert witness, Jim McClenden, an electrical arc occurred as a result of a short in the dome light fixture of the vehicle. He contends that the arc caused the fabric headliner surrounding the fixture to ignite, melting the plastic lens of the dome light and causing the lens cover to fall below, thereby setting the paper, wig and towel on fire. On the other hand, the State's expert, Willingham, opined that he found no evidence of an electrical fire, but instead held the opinion that the fire was intentionally started. Willingham stated that the fire burned from the floorboard upwards to the roof of the car.

The jury was free to believe Willingham's testimony and disbelieve McClenden's. Willingham's testimony, when coupled with Dozzier's uncontradicted eyewitness testimony, provides a sufficient evidentiary basis for the guilty verdict. Hence, we conclude, viewing the evidence in the light most favorable to the verdict, that rational jurors could have found that the essential elements of the arson offense were established beyond a reasonable doubt. Therefore, the court did not err in refusing to sustain appellant's motion for new trial on the ground that the evidence was insufficient to sustain her conviction. Appellee's cross point of error is overruled.

The order granting appellee a new trial because of jury misconduct is affirmed.