**Vincent Dwayne GUICE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–94–00209–CR.

Court of Appeals of Texas, Texarkana.

Submitted April 25, 1995.

Decided May 3, 1995.

Discretionary Review Refused Aug. 23, 1995.

388

James R. Hagan, Longview, for appellant.

C. Patrice Savage, Asst. Dist. Atty., Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

CORNELIUS, Chief Justice.

Vincent Dwayne Guice was tried by a jury, convicted of aggravated assault, and sentenced to ten years in prison with a $10,000.00 fine. On appeal he contends that the trial court should have granted his motion for new trial because the jurors received other evidence after they retired to deliberate. We affirm the judgment.

On March 15, 1994, Nickie McKinney was driving on FM 1242 in Gregg County when a passenger in an oncoming car shot her in the face with a .410 shotgun. Guice was charged with attempted murder and aggravated assault. The jury convicted him of the lesser offense of aggravated assault.

During the trial, Dr. John Campbell, director of the emergency department at Longview's Good Shepherd Medical Center, who treated McKinney when she was brought in, testified that she had been shot at "[f]airly close range." The pellets hit about forty-five degrees to the left of front. Guice was riding in a red Renault with four other teen-agers when he allegedly fired the shotgun at McKinney's car. All four of the other occupants said Guice was riding in the back seat behind the driver, Darron Shelton, and that he pointed the shotgun out the window and fired. Spencer Maddox was riding in the right front seat. LaMarcus Fagan was in the middle of the back seat, with Randall Clark to his right. Maddox testified, however, that he told investigators before trial that Clark was in the middle of the back seat, with Fagan on Clark's right.

The five teenagers in the Renault had been to Kilgore looking for some other teens who had once gotten into a fight with Fagan and Clark. Only Guice was armed. Guice was apparently angry because the five had not been able to find the Kilgore teens. Guice, who did not take the stand, introduced evidence suggesting that Clark fired the shotgun.

Guice filed a motion for a new trial on grounds that the jurors received other evidence after retiring to deliberate. TEX. R.APP.P. 30(b)(7).

At a hearing on the motion, juror Stephanie Foster testified that during deliberations some of the jurors said they were familiar with firearms, shotguns, and spread patterns from years of hunting. She said the jurors conducted an experiment to determine whether the shot could have been fired from somewhere other than the back left seat, Guice's position in the car. Foster said:

> Two different demonstrations were done where the gentlemen sat side by side in chairs that rolled, and then they determined that the chair widths were too wide. And there is an old antiquated air conditioning system in the room, and they surmised that width was the same as the back seat of the car; so they moved to that position and then handled the gun between themselves to figure out who could have shot it and who could not have.

Foster also testified that juror Chuck Rue said that, based on his own experience with shotguns and spread patterns, the cars would have to be passing close to each other, "within three to five feet." She said that he expressed an opinion that a gun shot from the middle of the back seat would not have caused McKinney's wounds. She testified that he formulated his opinion from the experiment rather than from the trial evidence.

Foster said that immediately after retiring for deliberations, the jurors voted, and the vote was 10 to 2 to find Guice guilty of either attempted murder or aggravated assault. After the demonstration, she said, the two jurors who voted to acquit changed their votes to "guilty." She testified she changed her vote, in whole or in part, because of the demonstration and the opinions expressed by Rue.

Under the court's questioning, Foster testified that the jurors had no textbooks or documents in the jury room that were not trial evidence. When asked if any juror had put himself forward as an expert, she said, "They didn't use the word expert, but the way they talked you could tell they knew what they were talking about." A motion for a new trial is addressed to the sound discretion of the trial court and will only be overturned on appeal by a showing of clear abuse of discretion. *Bolden v. State*, 634 S.W.2d 710, 711 (Tex.Crim.App. [Panel Op.] 1982).

A court should grant a motion for new trial if the jurors, after retiring to deliberate, received other evidence. Tex.R.App.P. 30(b)(7). To be entitled to a new trial on this ground, the defendant must show that the jurors actually received other evidence and that it was detrimental. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim.App. [Panel Op.] 1978). Whether the jurors received new and harmful evidence during their deliberations is a fact issue to be decided by the trial court, *Honeycutt v. State*, 157 Tex.Crim. 206, 248 S.W.2d 124, 125 (1952), and it is a question of degree. *Martinez v. State*, 846 S.W.2d 348, 350 (Tex.App.—Corpus Christi 1992, pet. ref'd). A reviewing court will not overturn the trial court's decision absent an abuse of discretion. *Honeycutt v. State, supra*.

Generally it is improper for jurors to conduct experiments or demonstrations in the jury room after beginning deliberations. *McLane v. State*, 379 S.W.2d 339, 342 (Tex. Crim.App.1964). Jurors may, however, in discussing the evidence among themselves, arrive at an understanding of the evidence by movements of their own bodies or by use of articles admitted in evidence which are taken with them. *Hoover v. State*, 107 Tex.Crim. 600, 298 S.W. 438, 441 (1927). A conscious and contrived experiment that does not come from the witness stand deprives the accused of the right of cross-examination or counsel, *Carter v. State*, 753 S.W.2d 432, 438 (Tex. App.—Corpus Christi 1988, pet. ref'd), but not every demonstration requires the court to grant a new trial. *McLane v. State, supra*. A reviewing court need not grant a new trial absent a showing that the jurors during the experiment discovered and were influenced by some *new* fact hurtful to the appellant. *Ingram v. State*, 363 S.W.2d 284, 285 (Tex.Crim.App.1962).

The State does not dispute the fact that the jurors conducted a demonstration. Instead, it argues that the demonstration unearthed no new facts and that any discussion about shotguns and pellet spread came from the jurors' general experiences

and perceptions. Jurors may draw on their general experiences and perceptions while deliberating. *Carter v. State,* 753 S.W.2d at 438. The State says the men conducting the demonstration talked only about evidence given during the trial: the .410 shotgun, the velocity of the shot, how the pellets would enter the face, the spread pattern, and if it hit a window or metal before striking McKinney.

The defense cites *Carter v. State, supra,* where the defendant was charged with attempted murder and aggravated assault. The defendant and the victim were working alone in a shop one night when the defendant doused the victim with gasoline while he was working under a truck and set him on fire. The defendant alleged that it was an accident. The jurors conducted a reenactment in which they determined that it was unlikely that the spill was an accident. The court of appeals held that, while the jurors are expected to call on their general experiences and perceptions while deliberating, the experiment was not merely the application of everyday experience. The court reversed and remanded for a new trial.

In *State v. Scott,* 819 S.W.2d 169 (Tex. App.—Tyler 1991, pet. ref'd), the defendant was accused of arson. The State called an arson investigator who testified that he examined the vehicle and concluded that the fire did not start because of an electrical accident or short. During deliberations, a juror, who was an electrician, said that, based on his experience as an electrician, a short could not have started the fire. The State argued that the juror was merely rehashing the testimony of the State's expert. The court held, however, that the juror was acting as an expert corroborating the testimony of the State's expert, and the jurors therefore received other evidence.

Guice argues that no testimony was given about spread patterns because the State's investigators had no opportunity to test fire the shotgun. The only testimony about the pellets' impact was Campbell's remarks that the wound was consistent with a shotgun pattern at "[f]airly close range" and his remarks that the impact came from about forty-five degrees from directly in front. Guice

argues that there was no trial evidence about the proximity of the shotgun to the victim calculated by the spread pattern. No evidence was developed comparing the difference between the spread patterns of a .410 shotgun and a 12–gauge shotgun, as Foster testified Rue discussed with the jurors. No one presented evidence concerning the effect of a choke on a shotgun spread pattern. No one presented evidence that if the shotgun had been fired from the middle of the back seat it would have been too far away to cause McKinney's wounds.

The trial court apparently determined the jurors discussed the evidence adduced at trial, used that evidence in conjunction with their own knowledge of firearms, and thus received no other evidence that was material or detrimental. Whether the jurors received other information is a fact question for the trial court. The court apparently determined after listening to Foster's testimony that the only material matter the jurors relied on to Guice's detriment was their own general experiences and perceptions. We defer to the trial court's fact finding and find no abuse of discretion.

The judgment is affirmed.