

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00298-CV

**GUADALUPE BLANCO RIVER AUTHORITY**,
Appellant

v.

Sandra Leigh **SCHNEIDER**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 11-2210-CV
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  December 28, 2012

AFFIRMED; REMANDED

In the underlying lawsuit, Sandra L. Schneider contends she sustained physical injuries as a result of a motor vehicle accident in which her vehicle was hit by a vehicle driven by David Kenda. The parties do not dispute that (1) Kenda's vehicle collided with Schneider's vehicle because Kenda failed to yield the right of way, (2) Kenda was driving his vehicle while in the course and scope of his employment with the Guadalupe Blanco River Authority ("GBRA"), and (3) GBRA is a governmental entity. Schneider sued both GBRA and Kenda on claims of negligence. Schneider later voluntarily dismissed Kenda as a defendant pursuant to an agreed

order with GBRA. GBRA filed a plea to the jurisdiction in which it asserted its governmental immunity was not waived because Schneider did not provide it with proper notice of her tort claim. Following the denial of the plea, GBRA filed this accelerated appeal. Because we believe a fact issue exists on whether GBRA received actual notice, we affirm the trial court's order and remand for further proceedings.

## DISCUSSION

"A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) (West 2011). "The notice must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." *Id.* These notice requirements "do not apply if the governmental unit has actual notice . . . that the claimant has received some injury, or that the claimant's property has been damaged." *Id.* § 101.101(c). The purpose of the notice requirement is to ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex 1995). The determination of whether a governmental unit received actual notice is a question of fact but may be determined as a matter of law where the evidence is insufficient to raise a fact issue. *Univ. of Tex. S.W. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 549 (Tex. 2010). GBRA argues Schneider failed to provide the statutorily required formal written notice and GBRA did not have actual notice of Schneider's alleged injuries. Schneider contends GBRA received formal statutory notice and had actual notice in the form of a letter from her attorney and its own internal documents. We address only whether GBRA had actual notice because we believe that is dispositive of the appeal.

The accident occurred on November 11, 2009. Five days later, on November 16, 2009, Schneider's attorney sent a letter to the Texas Water Conservation Association Risk Management Fund ("the Fund"), in which counsel stated his law office had "been retained to represent [Schneider] in the recovery of property damages and personal injuries sustained in a motor vehicle accident on the above mentioned date." In addition to the date of loss, the letter identified the insured as GBRA, the driver as Kenda, and Schneider as the client/claimant. Two days later, the Fund sent a letter to Schneider's attorney advising him that GBRA was self-insured; there was no insurance coverage available; and the Fund would handle all claims for GBRA. In his affidavit, William West, Jr., GBRA's General Manager and the individual responsible for receipt of notice and investigation of claims against GBRA, acknowledged receiving the letter. On appeal, Schneider asserts GBRA's internal documents that were generated during the investigation and claims-handling process provided GBRA with actual notice. According to Schneider, all the information necessary to allow GBRA to gather information, settle claims, and prepare for trial is contained within these documents because the documents identify the parties, indicate an injury was sustained, and allege fault on Kenda's part.

In *Cathey*¸ the Texas Supreme Court held "that actual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." 900 S.W.2d at 341. The mere existence of records kept by the governmental entity is not sufficient to raise a fact issue about actual notice. *Id.* at 342 (holding hospital's own records did not impute actual notice to hospital from the knowledge that a patient received treatment at its facility or died after receiving treatment); *Dinh v. Harris Cnty. Hosp. Dist.*, 896 S.W.2d 248, 253 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.) (same).

Nor is mere notice that an accident has occurred or investigating an accident sufficient to provide actual notice.

In 2004, the Texas Supreme Court clarified the "knowledge of alleged fault" requirement by stating its opinion in *Cathey* "did not mean that the governmental unit was required to know that the claimant had actually made an allegation of fault." *Texas Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 347 (Tex. 2004). Instead,

> [w]hat we intended in *Cathey* by the second requirement . . . was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a). That includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury . . . . It is not enough that a governmental unit should have investigated an incident . . ., or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault. If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.

*Id.* at 347-48. "*Cathey* cannot fairly be read to suggest that a governmental unit has actual notice of a claim if it could or even should have learned of its possible fault by investigating the incident." *Id.* at 347. "Governmental units would not be given notice of most incidents and would thus have some need to investigate them all, which, as we explained in *Cathey*, would defeat the purpose of the notice provision." *Id.* Accordingly, "a governmental unit cannot acquire actual notice merely by conducting an investigation, or even by obtaining information that would reasonably suggest its culpability." *Id.* at 348.

As support for her argument that GBRA received actual notice, Schneider points to (1) "Liability/Property Claim Cover Sheets," one of which identifies Schneider as the "claimant" and describes the "loss" as "District Veh FYRow and OP collided w/ vehicle. Atty Involvement"; (2) "Accident Report Forms" apparently completed by Kenda in which he writes

he was ticketed for "not yielding" and he identifies the other driver as Schneider; (3) a "Property Damage Appraisers Invoice" billed to J.I. Specialty Services for "auto physical damage"; and (4) an "Injury/Illness Report Form" completed by Kenda. The two "Liability/Property Claim Cover Sheets" contain the names and contact information of Kenda and Schneider, but do not mention any injuries to Schneider or damage to her vehicle. The two "Accident Report Forms" completed by Kenda states he was ticketed for "not yielding" and that he "was pulling out from Nolte Park Road and was to[o] far in driving [unreadable] and the other car hit me." The forms contain contact information for both Kenda and Schneider and indicate the damage to her vehicle was "minimal." A column entitled "Injured Individuals" contains Schneider's name but "Extent of Injury" is blank. However, the bottom of one of the forms contains, in a different handwriting, the following notation: "EMS Hosp. Dr Morrow – [unreadable] neck, back, shoulder."

The "Property Damage Appraisers Invoice" and forms related to the rental of a vehicle indicate "auto physical damage" and "Type of Loss" as "Collision." No information about the nature of the collision or who caused it is contained within any of the forms related to the repair of Schneider's vehicle. The "Injury/Illness Report Form" relates only to any injury or illness on Kenda's part and does not state any information about Schneider. Kenda was not injured, and the section of the form regarding how or why any injury/illness occurred states: "Employee pulling out of entrance road and onto FM 466. GBRA vehicle struck and [sic] on-coming car traveling on FM 466." Finally, the GBRA "Investigation Report" states the "Problem" was a "Truck Accident" and the "Cause" as "Did not see car." The report also listed "Corrective Actions" as "look more than once," "use caution when entering roadway," and "continue looking when entering roadway." Nothing related to Schneider is mentioned within the report.

On appeal, GBRA asserts none of these documents demonstrates any knowledge by GBRA of any specific injury Schneider claimed as a result of the accident or GBRA's fault. We disagree. In *City of Wichita Falls v. Jenkins*, the appellate court held that a letter that merely stated appellees sustained "personal injuries and other damages" in the accident was sufficient formal notice under section 101.101(a)). 307 S.W.3d 854, 860-61 (Tex. App.—Fort Worth 2010, pet. denied). However, the court also held that even if the letter was not sufficient statutory notice, the evidence supported the conclusion that the City had actual notice of appellees' claims because the police officer's crash report listed the driver's driver's license number and address, and noted property damage to vehicles of at least $1,000; and the police report provided a detailed description of the incident and contained the names of each occupant of the driver's vehicle. *Id.* at 861. "Thus, on the date of the accident, a City representative had notice that a City-owned vehicle was at fault in an accident that caused at least $1,000 of vehicle damage and also knew the identities of all the persons involved in the accident." *Id.* "This, too, meets the purpose of the notice requirement of the statute to put the City on notice to investigate, settle, and prepare for trial." *Id.* "That the occupants did not appear to be injured and drove away from the accident, although possibly relevant for trial purposes (subject to an evidentiary determination by the trial judge), does not negate the City's notice that an on-duty officer driving a City-owned vehicle rear-ended the car in front of him, causing visible property damage." *Id.*

Here, the November 16, 2009 letter and the various records include information about (1) the time, date, place, and circumstances of the accident, (2) that Kenda's failure to yield was a contributing factor in the accident, (3) the identity of the parties, (4) that Schneider's vehicle was damaged, and (5) that Schneider possibly suffered physical injuries. We conclude the letter and the records are sufficient to raise a fact issue on whether GBRA had actual knowledge to enable

it to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial.

GBRA also asserts that, the information in the documents aside, there is no evidence a GBRA employee with a duty to investigate had subjective awareness that the fault of a GBRA employee was a producing or contributing cause of injury or property damage. GBRA relies on the affidavit of William E. West, Jr., in which West stated GBRA was not subjectively aware of any claims or its alleged liability for Schneider's alleged injuries until January 26, 2011, when Schneider's attorney sent a second, more detailed letter. West claimed Kenda had no duty to investigate, gather facts, or report any claims or accidents to GBRA.

If an agent or representative receives notice of the incident and had a duty to gather facts and report, actual notice can be imputed to the governmental entity. *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339 (Tex. App.—San Antonio 2010, no pet.). But, actual notice is not limited to a particular official or employee of a government entity, such as a director of risk management. *Id.* "As a practical matter, a governmental entity cannot put on metaphorical blinders and designate only one person in its entire organization through whom actual notice may be imputed when the facts support that there are other representatives who have a duty to gather facts and investigate on behalf of the governmental entity." *Id.* at 339-40.

As mentioned above, the Texas Water Conservation Association Risk Management Fund handles claims for GBRA, which "is a Self-Insured Governmental Entity." The November 18, 2009, letter from the Fund to Schneider's attorney is signed by Velvet C. Dixon. Ms. Dixon's name is on the Property Damage Appraisers Invoice and Report, where she is identified as the "adjuster." The Accident Report Forms are the forms used by the Fund and identify Jeannine Herrmann as the contact person. Ms. Herrmann's name is also on the Liability/Property Claim

Cover Sheets. The Accident Report Forms, which instruct drivers to keep the form in the glove box and use in case of an accident, contain the following instruction: "Submit the completed form to the individual in your center who is responsible for monitoring and reporting accidents to the Fund." We conclude these forms raise a fact issue on whether the Fund is an agent of GBRA and whether the Fund's notice of the accident and duty to gather facts and report impute actual notice to GBRA.

## CONCLUSION

We conclude there is sufficient evidence to raise a fact issue regarding actual notice; therefore, the trial court did not err in denying GBRA's plea to the jurisdiction.[1] Accordingly, we affirm the trial court's order denying GBRA's plea to the jurisdiction and remand for further proceedings.

Sandee Bryan Marion, Justice

---

[1] Because the issue of actual notice is dispositive, we do not reach the issue of formal written notice. *See* TEX. R. APP. P. 47.1; *see also Stevens*, 330 S.W.3d at 341 (holding same).