**Gary Lee JENNINGS, Petitioner,**

v.

**William OKU, Administrator, Halawa High Security Facility, Respondent.**

**Civ. No. 86-1026.**

United States District Court,
D. Hawaii.

Jan. 15, 1988.

Michael R. Levine, Federal Public Defender, Honolulu, Hawaii, for petitioner.

Ryan Jiminez and Peter Morimoto, Kauai County Prosecutor, Lihue, Kauai, Hawaii, Warren Price, Atty. Gen., Honolulu, Hawaii, for respondent.

**ORDER CONDITIONALLY GRANTING PETITIONER'S REQUEST FOR WRIT OF HABEAS CORPUS**

KAY, District Judge.

I.

The petitioner herein, Gary Lee Jennings, was tried and convicted in state court of murder. On May 18, 1984, Jennings was sentenced to life imprisonment.

While the jury deliberated on Jennings' verdict, it conducted an experiment in order to resolve a crucial issue in the murder trial. Jennings sought a new trial on the grounds that the jury had engaged in unconstitutional misconduct by performing the experiment. The trial court refused to grant the motion for a new trial, and the Hawaii Intermediate Court of Appeals af-

firmed the trial judge. Consequently, Jennings brought a habeas corpus petition to this court under 28 U.S.C. § 2254. In an order of October 5, 1987, Magistrate Tokairin recommended that the petition be granted. The state has filed objections to the Magistrate's report and recommendation that the petition be granted. The defendant, through counsel, has filed an answering brief. Since the State of Hawaii has objected to the Magistrate's report and recommendation, the matter will receive *de novo* review in this court. *See* Local Rule 404–2.

## II.

Abigail Williams was found murdered on March 1, 1983, lying on the ground near her car near Moloaa on Kauai. There was evidence indicating Williams had also been raped.

Police investigators focussed their investigation of Williams' murder on Jennings. A fingerprint which was found on the doorjamb of the driver's seat door of the victim's vehicle matched Jennings' fingerprint, although no other physical evidence which was found by the police could be linked to Jennings. Apparently, the fingerprint on the doorjamb was the only direct evidence linking Jennings with the crime. Although police investigators took hair and blood samples from both Jennings and the victim, the investigators were unable to establish any link which would have evidenced that Jennings had assaulted the victim, sexually or otherwise.

The jury began to deliberate on their verdict at 4:35 p.m. on April 18, 1984. At around noon on April 19, the entire jury left the jury room in order to conduct an experiment. The purpose of the experiment was to determine how Jennings' fingerprint could have been placed on the murdered woman's car door. While the prosecutor's version was that the fingerprint was placed on the doorjamb when Jennings murdered the woman and attempted to wipe his fingerprints off the car door, Jennings asserts that the fingerprint was placed on the doorjamb when he opened the car door to steal the wallet of the dead woman. Jennings alleges that the wallet was lying on the floor of the car.

The particulars of the experiment are as follows: the entire jury left the jury room and went to the jury foreman's car which was, like the victim's car, a Datsun. The victim's car, however, had been a Datsun station wagon while the jury foreman's car was a Datsun sedan. The jurors chose the jury foreman's car for the experiment because his car was closest to the jurors after they left the jury room. *See* Transcript of Proceedings, Motion for New Trial, May 16, 1984, pp. 4–6. One of the female jurors sat in the driver's seat of the car while one of the male jurors assumed the role of the murderer. *Id.* Apparently, the intent of the experiment was to resolve how Jennings' fingerprint could have been found on the door of the car. Accordingly, the jurors attempted to reenact the crime, as they perceived it had been committed. The jury foreman testified at the hearing on the motion for a new trial that "some of the jurors couldn't understand how his [Jennings'] hand was on the car, so we just went outside to show them how it was physically, so they could see it and better understand." *Id.* at 5. Within about an hour of conducting this experiment, the jury returned a verdict of guilty against the defendant on the murder charge.

As noted above, Jennings' fingerprint on the car doorjamb was amongst the most important evidence linking Jennings to the crime. The defendant notes that the prosecutor mentioned the presence of Jennings' fingerprint on the car doorjamb six times during his closing argument. Based upon the alleged juror misconduct which resulted in the creation of extraneous evidence, the defendant has moved for habeas corpus relief. Magistrate Tokairin has recommended that the petition for habeas corpus relief be granted.

## III.

Whether jury misconduct is sufficiently egregious to warrant a federal court to grant habeas corpus relief pursuant to 28 U.S.C. § 2254 is addressed in the Ninth Circuit case of *Marino v. Vasquez,* 812

F.2d 499 (9th Cir.1987). In *Marino,* the Ninth Circuit held that when a jury obtains or uses evidence that has not been introduced into the trial record in reaching a verdict, a petition for habeas corpus relief to overturn the conviction for jury misconduct should be granted unless "it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." *Id.* at 504. The burden of proof in this matter is on the prosecution. *Id.* The rationale for overturning a conviction because of jury misconduct was set forth by the Ninth Circuit in *Gibson v. Clanon,* 633 F.2d 851, 853 (9th Cir.1980), wherein it was held that

> "[w]hen a jury considers facts that have not been introduced in evidence, a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to jury consideration of the extraneous evidence. In one sense the violation may be more serious than where these rights are denied at some other stage of the proceedings because the defendant may have no idea what new evidence has been considered. It is impossible to offer evidence to rebut it, to offer a curative instruction, to discuss its significance in argument to the jury, or to take other tactical steps that might ameliorate its impact."

In the instant case, the respondent claims that the jury experiment should not sustain a petition for habeas corpus relief because the experiment did not give rise to any "new evidence" at all. Indeed, the trial court and the Intermediate Court of Appeals found that the experiment had not led to "new evidence" because the jurors could have drawn a diagram of the car, or conducted the experiment mentally, and reached the same conclusion they had reached by performing the physical experiment during deliberation. The respondent further claims that the state court's findings that the experiment did not create new evidence is entitled to the statutory presumption of correctness set forth in 28 U.S.C. § 2254(d).

The petitioner, on the other hand, argues that the experiment *did* lead to the jury's

consideration of new evidence which would have been inadmissible at trial. The petitioner states that the differences in the measurements of the victim's and the jury foreman's cars, as well as the differences in body size and type between the jurors who assumed the rolls of the victim and the murderer and the actual victim and murderer, may have been so substantial as to render the results of the physical experiment inadmissible at trial, if the results had been sought to be introduced. *See Hall v. General Motors Corp.,* 647 F.2d 175, 180 (D.C.Cir.1980) (experimental evidence is not admissible unless the experiment conditions are nearly identical to the conditions involved in the incident involved in the litigation so "as to afford a fair comparison in respect to the particular issue to which the test is directed"). The petitioner also argues that the fact that the jury *could have* performed the experiment mentally or by drawing a diagram is irrelevant. The petitioner concedes that a mental experiment performed by the jury, or the preparation of a diagram in the jury room, would not have tainted the verdict. The petitioner argues, however, that the performance of what appears to be an unreliable physical experiment impermissibly tainted the jury's verdict.

■ This court begins by noting that the statutory presumption of correctness set forth in 28 U.S.C. § 2254(d) is inapplicable in the instant case. Section 2254(d) provides in pertinent part that

> "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... [and] evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct ..."

The statutory presumption of correctness *does not* apply to a State court's conclusions of law. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980). In the seminal case of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the opinion which precipitated the enactment of the statutory presump-

tion of correctness, the Supreme Court mandated federal court deference to State courts' findings of "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators ...'" *Id.* at 83 S.Ct. at 755 n. 6 (citation omitted). While this court will defer to the State courts' findings on what actually transpired during the course of jury deliberations in this case, the existence or non-existence of "extrinsic evidence" created by the jury experiment is a mixed question of fact and law. Mixed questions of fact and law are not entitled to the statutory presumption of correctness. *Cuyler,* 100 S.Ct. at 1715; *Marino,* 812 F.2d at 504; *Carter v. Rafferty,* 826 F.2d 1299, 1306 (3d Cir.1987).

▇ Having concluded that the statutory presumption of correctness does not apply to the State courts' conclusion that the jury experiment did not create new evidence, this court finds that the jury experiment *did,* indeed, create new evidence. "Evidence" is defined as

> "[a]ny species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention."

Black's Law Dictionary, Rev. 4th Edition. Although the results of the jury experiment were not presented at the trial (and, as noted above, would have probably been inadmissible at trial), the results of the experiment meet the foregoing definition of "evidence" in every other respect. That is, the results of the experiment were probative material that could have induced a belief in the jury as to the veracity of either the government's or defendant's version of how Jennings' fingerprints were placed on the doorjamb.

In reaching the conclusion that the jury's experiment led to "new evidence" in violation of the petitioner's Sixth and Fourteenth Amendment rights, this court is guided by the Ninth Circuit's recent *Marino* opinion. In *Marino,* the Ninth Circuit

reviewed the propriety of a district court's grant of habeas corpus relief pursuant to 28 U.S.C. § 2254. The district court had granted the writ because of two instances of jury misconduct. One of the instances involved an out-of-court experiment wherein a juror experimented with a handgun belonging to her ex-husband "to see if she could pull the trigger with the gun in the relevant position." 812 F.2d at 503. Even though the Ninth Circuit noted that a similar authorized experiment had been performed during jury deliberations with a plastic toy gun, the court felt that the juror's experiment had resulted in constitutional error mandating a writ of habeas corpus. (It should be noted that in *Marino,* the unauthorized experiment was conducted by the juror with the assistance of a non-juror. The involvement of the non-juror made the unauthorized experiment even more constitutionally offensive according to the Ninth Circuit.)

Similarly, in *Durr v. Cook,* 589 F.2d 891 (5th Cir.1979), a convicted defendant filed a petition for writ of habeas corpus based on the allegation that the jury foreman had improperly engaged in an out-of-court experiment during the course of his deliberations. The petitioner alleged that the jury foreman

> "went to a local Ford dealership and asked to look at a pickup truck. Once in the truck, [the petitioner] alleges that [the foreman] made certain twisting movements in an apparent attempt to test [the petitioner's] self-defense explanation. [The petitioner] further alleges that [the foreman] returned to the jury and reported the findings of his experiment."

*Id.* at 892. In support of these allegations, the petitioner had the dealership owner, who had observed the foreman's conduct, testify before the district judge. The trial judge found that the experiment

> "amounted to taking the truck into the juryroom and having it available in deliberations by that body before reaching its verdict of guilty ... [T]he actions of the jury foreman constitutionally were impermissible, and amounted to evidence being introduced without knowledge or

consent of the court and without defendant or the State being able to contest, or make inquiry, as to the evidence thus adduced. This is one of the basic rights enunciated by the Sixth Amendment." *Durr v. Cook*, 442 F.Supp. 487, 489–90 (W.D.La.1977). On review, the Fifth Circuit did not disagree with the legal conclusions that the district court had reached, but found that the testimony of the dealership owner had been insufficient to establish the fact that the foreman's actions in the Ford were in any way connected with an experiment relating to the petitioner's trial. Accordingly, the cause was remanded to the district court for further factual inquiry. The District Court subsequently found that prejudice did occur in the defendant's trial so that he was deprived of his Fourteenth Amendment right to due process of law, with the evidence indicating that the jury foreman did conduct an out-of-court experiment and that the results of this experiment were communicated to members of the jury before the jury began its deliberations. *Durr v. Cook*, Civ. No. 77–0816 (W.D.La. June 29, 1979).

In the instant case, the testimony of the jury foreman at the hearing on the petitioner's motion for a new trial leaves no doubt that a constitutionally impermissible experiment transpired during the course of jury deliberations. With guidance from the *Marino* and *Durr* decisions, this court concludes that that experiment led to the jury's consideration of "extrinsic evidence."

■ Having found that the jury's experiment created "extrinsic evidence," this court must go on to determine whether that "extrinsic evidence" tainted the verdict. As noted above, the Ninth Circuit has held that when a jury obtains or uses evidence that has not been introduced into the trial record in reaching a verdict, a petition for habeas corpus relief to overturn the conviction for jury misconduct should be granted unless "it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." *Marino*, 812 F.2d at 504. The burden of proof in this matter is on the prosecution. *Id.* In *Bayramoglu v. Estelle*, 806 F.2d 880 (9th

Cir.1986), the Ninth Circuit enumerated five factors to be considered in determining whether "extrinsic evidence" tainted a verdict:

"(1) whether the material was actually received, and if so how, (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict."

*Id.* at 887. In the instant case, all of the jurors participated in the constitutionally impermissible experiment before they reached a verdict in the petitioner's case. The fact that the jury returned its verdict very shortly after the experiment was conducted gives substantial evidence of a "reasonable possibility" that the "extrinsic evidence" affected the verdict. The respondent has failed to present evidence which would establish beyond a reasonable doubt that the "extrinsic evidence" did not affect the verdict. Thus, the respondent has failed to carry its burden in this regard.

Because this court has concluded that the jury's experiment resulted in the jury's consideration of "extrinsic evidence" in its deliberations, and because this court has determined that there is a reasonable possibility that this "extrinsic evidence" affected the jury verdict, the petitioner's request for a writ of habeas corpus must be granted. With all due deference to the State courts in their careful consideration of the important issues raised by the petitioner, this court finds that denial of the petitioner's writ of habeas corpus would violate his Sixth and Fourteenth Amendment rights.

Jennings was convicted of a brutal murder. This court has the highest respect for the Hawaii Intermediate Court of Appeals, and this court appreciates the difficulties that may be present in the prosecution of a new trial at this date. Nevertheless, this court is compelled to protect Jennings' constitutional rights as enunciated by the 9th

and 5th Circuit Courts of Appeal in *Marino* and *Durr*.

WHEREFORE, the court adopts the Recommendation of the Magistrate, and it is HEREBY ORDERED that the petitioner's conviction and sentence be vacated and set aside, and that he be retried within 120 days. In the event that the State decides not to retry petitioner within 120 days, he shall be released.