783 P.2d 483

STATE of New Mexico,
Plaintiff–Appellee,

v.

Merrill Burrous CHAMBERLAIN,
Defendant–Appellant.

No. 11402.

Court of Appeals of New Mexico.

Oct. 3, 1989.

Certiorari Denied Nov. 15, 1989.

174

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Defendant appeals his convictions of aggravated assault with intent to commit a violent felony upon a peace officer, misdemeanor assault, and misdemeanor battery. The second calendar notice proposed summary affirmance. Defendant has timely responded to that proposal. Not being persuaded by his arguments, we affirm.

FACTS

Defendant was convicted on charges arising from two closely related episodes. First, defendant committed battery on a prostitute in his home. She managed to escape to a bathroom, where she called the police emergency number on a portable telephone. By the time Officers John Carrillo and John Messimer arrived at defendant's home, defendant was alone. Defendant invited the officers into his home, stated that there were no women there, and asked the officers if they wanted to take a look. Officer Carrillo activated a portable tape recorder attached to his gun belt. The officers discovered a woman's comb on a bed. After being questioned about the comb, defendant stated that he would not answer any further questions without his attorney and requested the officers to leave the house. They did not leave. Defendant unsuccessfully tried to reach his attorney by telephone. Shortly thereafter a gun battle ensued. Officer Carrillo was killed. Defendant fired several shots at Officer Messimer.

ADMISSIBILITY OF TAPE RECORDING

Defendant's principal contention is that the district court should have suppressed the portion of the tape recording from the time defendant stated that he wished to see an attorney and told the officers to leave his home. First, he argues that the tape was made during an illegal search. Defendant agrees that the police were originally lawfully in his house, either by consent or because of an emergency. He contends, however, that once (1) the police officers had searched his home without finding anything to indicate a real emergency and (2) he had withdrawn his consent, then the police officers were illegally in his home and any evidence obtained after that time should have been suppressed. We do not agree.

■ We need not decide whether the officers were lawfully on defendant's premises after he told them to leave. Assuming that the officers remained on the premises unlawfully, we must still determine "'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."' *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (quoting J. Maguire, *Evidence of Guilt* § 5.07, at 221 (1959)). By that test, the evidence should be admitted. We find it bizarre to think that the officers "exploited" the allegedly unlawful entry in order to be shot at.

Our conclusion is supported by the other courts that have considered the admissibility of evidence of a crime committed upon law enforcement officers who may have conducted an unlawful search or seizure. *See United States v. Bailey,* 691 F.2d 1009 (11th Cir.1982) (defendant forcibly resisted unlawful arrest), *cert. denied,* 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983); *Napageak v. State,* 729 P.2d 893 (Alaska Ct.App.1986) (assault after officers unlawfully entered defendant's home); *State v. Wren,* 115 Idaho 618, 768 P.2d 1351 (Ct. App.1989) (battery on officer after unlawful arrest of defendant in his home); *People v. Klimek,* 101 Ill.App.3d 1, 56 Ill.Dec. 403, 427 N.E.2d 598 (1981) (battery on officers unlawfully within defendant's apartment); *State v. Boilard,* 488 A.2d 1380 (Me.1985) (assault after officers unlawfully entered defendant's home); *Commonwealth v. Saia,* 372 Mass. 53, 360 N.E.2d 329 (1977) (assault and battery on officers who may have unlawfully entered defendant's home); *State v. Kittleson,* 305 N.W.2d 787 (Minn.1981) (assault on officer who may have unlawfully entered defendant's room); *People v. Townes,* 41 N.Y.2d 97, 359 N.E.2d 402, 390 N.Y.S.2d 893 (1976) (defendant drew gun after officers unlawfully told him to "freeze"); *State v. Miller,* 282 N.C. 633, 194 S.E.2d 353 (1973) (murder of officer conducting unlawful search); *State v. Saavedra,* 396 N.W.2d 304 (N.D.

1986) (disorderly conduct by defendant—predicated upon scuffle with an officer—who had been arrested unlawfully); *State v. Burger,* 55 Or.App. 712, 639 P.2d 706 (1982) (assault after officers unlawfully entered defendant's home and arrested him); *State v. Aydelotte,* 35 Wash.App. 125, 665 P.2d 443 (1983) (assault after officers entered defendant's property); 4 W. LaFave, *Search and Seizure* § 11.4(j) n. 370 (2d ed. 1987). *Cf. United States v. King,* 724 F.2d 253 (1st Cir.1984) (unlawful shooting was intervening act that provided probable cause even if shooting resulted from unlawful police conduct); *United States v. Nooks,* 446 F.2d 1283 (5th Cir.) (similar to *King*), *cert. denied sub nom. Hughes v. United States,* 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971).

We agree with the view expressed by the North Carolina Supreme Court in refusing to suppress evidence of the murder of an officer who had been conducting an unlawful search: "Application of the exclusionary rule in such fashion would in effect give the victims of illegal searches a license to assault and murder the officers involved—a result manifestly unacceptable * * *." *State v. Miller,* 282 N.C. at 641, 194 S.E.2d at 358. *Cf. State v. Doe,* 92 N.M. 100, 583 P.2d 464 (1978) (private citizen cannot use force to resist a search by authorized police officers even if arrest is illegal). We seriously doubt that suppression in such cases would advance the goal of deterring violations of the fourth amendment (made applicable to the states through the fourteenth amendment). *See United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974) (purpose of suppression of evidence is to deter violations of fourth amendment). Nothing in this case suggests that the officers engaged in unlawful conduct with the purpose of inducing criminal acts by defendant.

■ Although none of the cases cited above involved the admissibility of a tape recording of an attack on an officer, a tape recording poses no special fourth amendment problem when it is made with the consent of a party to the conversation. A

police officer or agent does not violate the fourth amendment by electronically recording or transmitting his conversations with another person. *See United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *State v. Hogervorst*, 90 N.M. 580, 586, 566 P.2d 828, 834 (Ct.App. 1977).

■■■ Defendant also contends that admission of the tape recording violated his fifth amendment right not to incriminate himself and his sixth amendment right to counsel (both rights being applicable to state conduct through the fourteenth amendment). His fifth amendment claim is predicated on the failure of the officers to give him *Miranda* warnings after he asked them to leave. Such warnings are required only for custodial interrogation. *See Armijo v. State ex rel. Transp. Dep't*, 105 N.M. 771, 737 P.2d 552 (Ct.App.1987). Although defendant claims that he was not free to leave and therefore was in custody, the evidence that has been presented to us by defendant does not compel that conclusion. In *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983), the Court said, "[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (Quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).) The district court could properly have found that defendant was not in custody. *See Armijo v. State ex rel. Transp. Dep't*. In any event, defendant points to no interrogation that took place after he asked the officers to leave. *Miranda* warnings are not required in the absence of interrogation.

■■ Defendant apparently bases his sixth amendment claim on the officers' remaining in his home after he stated that he wished to consult his attorney. The sixth amendment right to counsel does not attach, however, until judicial proceedings have been initiated against the suspect, such as by way of indictment or preliminary hearing. *See Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Kirby v. Illinois*, 406 U.S. 682, 92

S.Ct. 1877, 32 L.Ed.2d 411 (1972). The right to counsel upon which defendant must be relying actually derives from the fifth amendment privilege against self-incrimination. The fifth amendment privilege is safeguarded by guaranteeing a right to counsel at the time of custodial interrogation. *See Edwards v. Arizona*, 451 U.S. 477, 481–82, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981). Again, however, defendant does not point to any interrogation that took place after he expressed his wish. Also, if defendant was not in custody, the officers did not have a duty to cease questioning after defendant requested counsel. *See id.*

Therefore, the tape recording was admissible on the charge of assault with intent to kill Officer Messimer. Although the recording may not have been admissible to prove the assault and battery on the prostitute, defendant did not seek a limiting instruction, so we need not address that matter. *See State v. Padilla*, 90 N.M. 481, 565 P.2d 352 (Ct.App.1977) (not error to admit evidence that is admissible for one purpose but not for another); *State v. Turner*, 97 N.M. 575, 642 P.2d 178 (Ct.App.1981) (failing to instruct jury as to the limited purpose for which evidence was admitted is not error when no request for instruction was made).

## ISSUES ANSWERED SUMMARILY

Defendant continues to argue that unsolicited trial testimony of the prostitute was inadmissible because it suggested that defendant frequented prostitutes and that defendant had ties to drug trafficking. Defendant still has not provided this court with the manner in which this testimony was elicited. Because of defendant's failure to provide us with a summary of all the facts material to consideration of this issue, as required by SCRA 1986, 12–208(B)(3), we cannot grant relief on this ground.

■■■ Defendant contends that the full jury knew about a communication to a juror from her husband concerning the penalty for second-degree murder. We fail to see how the communication could have prejudiced defendant because a mistrial was declared on the murder charge. Also,

the district court interviewed the juror and the jury foreman, who both said that the communication would not affect their verdicts. The record does not support defendant's contention that other jurors also learned of the communication. Thus, the district court did not abuse its discretion in denying defendant's request for a mistrial or a curative instruction.

## CONCLUSION

Defendant has provided this court with no additional facts or authorities in support of his remaining issues. Therefore, for the reasons stated in our two calendar notices, we affirm.

Defendant's convictions are affirmed.

IT IS SO ORDERED.

BIVINS, C.J., and APODACA, J., concur.