819 P.2d 673

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Merrill CHAMBERLAIN, Defendant–
Appellant.**

No. 18938.

Supreme Court of New Mexico.

Sept. 25, 1991.

Robert J. Jacobs, Taos, for defendant-appellant.

Tom Udall, Atty. Gen., Charles Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

BACA, Justice.

Defendant-appellant Merrill Chamberlain appeals his conviction on a charge of first-degree murder for which he received a life sentence.

On February 21, 1987, Chamberlain hired a female prostitute whom he then brought to his home. That evening she called the police to report a beating. Officers Carrillo and Messimer of the Albuquerque Police Department responded. Chamberlain denied that a woman was present and allowed the police to enter the house, consenting to their search. The officers conducted an initial search of the premises and did not find the woman, although they found evidence that a woman had been in the home. They sought to continue the search and wanted to return to the upstairs, but Chamberlain attempted to withdraw his consent. The officers insisted on continuing to search and accompanied Chamberlain to his bedroom. Chamberlain removed a semi-automatic weapon from the bedroom and took it into the bathroom. He then shot and killed Officer Carrillo.

Two trials were held. In the first, Chamberlain was convicted of several lesser offenses, but a mistrial was declared on the capital charge. This appeal is taken from his conviction in the second trial.

Appellant asserts the court erred in its: (1) refusal to change venue; (2) refusal to strike the jury venire; (3) failure to excise or suppress portions of a tape recording made during the shooting; (4) refusal to propound requested jury instructions; (5) refusal to grant a mistrial for prosecutorial misconduct; (6) failure to instruct the jury that, after it began to consider a lower count, it could not reconsider a higher count; and (7) failure to grant a new trial because of jury experimentation. He also contends he was denied effective assistance of counsel in violation of the sixth amendment and that cumulative error requires reversal. We consider appellant's arguments, and we affirm.

## I. CHANGE OF VENUE

Appellant moved for a change of venue pursuant to NMSA 1978, Section 38–3–3 (Repl.Pamp.1987), arguing that extensive publicity had exposed potential jurors to information regarding the case. The motion was denied with leave to renew after voir dire. The renewed motion was also denied, and appellant asserts the court thereby abused its discretion and violated his right to a fair trial.

■ The trial court possesses broad discretion in ruling on motions to change venue, and we will not disturb its decision absent a showing of an abuse of that discretion. *State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984). The burden to show an abuse of discretion lies with the movant. *State v. Jimenez*, 84 N.M. 335, 337, 503 P.2d 315, 317 (1972). Exposure of venire members to publicity about a case by itself does not establish prejudice or create a presumption of prejudice. *State v. McGuire*, 110 N.M. 304, 311, 795 P.2d 996, 1003 (1990); *see also State v. Hargrove*, 108 N.M. 233, 239, 771 P.2d 166, 172 (1989) (fairness does not require jurors who are totally ignorant of facts of case). "[T]he pertinent inquiry is whether 'the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant.'" *McGuire*, 110 N.M. at 311, 795 P.2d at 1003 (quoting *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984)). The court determined through voir dire that the jurors, although they may have heard of the case, were not incapable of impartiality. More is not required. Appellant has not carried his burden, and we affirm.

## II. JURY VENIRE

■ Appellant argues that he was denied his right to a venire composed from voter registration and driver's license records as required by NMSA 1978, Section 38–5–3 (Cum.Supp.1990). We resolved this issue in *State ex rel. Stratton v. Serna*, 109 N.M. 1, 780 P.2d 1148 (1989), where we found the plain language of Section 38–5–3 required the jury pool to be expanded ninety days after the next general election, and

we refuse to reconsider that conclusion. Appellant's trial took place before the expanded pool took effect. Section 38–5–3 was not violated.

## III. FAILURE TO EXCISE OR SUPPRESS PORTIONS OF A TAPE RECORDING

When Officer Carrillo entered Chamberlain's house, he turned on a tape recorder attached to his belt and recorded his conversations with appellant and the other officer, the sound of gun shots, and sounds made by Carrillo after he had been shot. This tape was played to the jury.

### A. *Failure to Excise.*

■ Appellant argues that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice and the court erred in admitting that portion of the tape containing Carrillo's moans made prior to his death. *See State v. Baca*, 89 N.M. 204, 549 P.2d 282 (1976); SCRA 1986, 11–403. The trial court is vested with great discretion in applying Rule 403, and it will not be reversed absent an abuse of that discretion. *Mac Tyres, Inc. v. Vigil*, 92 N.M. 446, 589 P.2d 1037 (1979). Evidence should be excluded if it is "calculated to arouse the prejudices and passions of the jury and [is] not reasonably relevant to the issues of the case." *State v. Boeglin*, 105 N.M. 247, 253, 731 P.2d 943, 949 (1987).

■ Appellant presented a theory of self defense. The tape tended to disprove that theory and was relevant, therefore, to the state's case. The recording showed that Carrillo was talking on his radio prior to being shot. Evidence was presented that police procedure forbids talking on the radio while holding a weapon. The tape also showed the officer was alive after being shot. The tape thus was probative of whether Carrillo drew his weapon prior to being shot and supported the possibility he drew it subsequently.

The evidence was also probative of appellant's intent to kill—the tape showed that Chamberlain shot Carrillo a second time

after hearing his moans. *See Boeglin*, 105 N.M. at 253, 731 P.2d at 949 (danger of unfair prejudice from admission of gruesome photographs of victim did not substantially outweigh its value as probative of intent).

Thus, we hold that although the tape may have been prejudicial, it had probative value, and the district court properly and within its discretion balanced the probative value of the tape against its potential for unfair prejudice. The court did not abuse its discretion in admitting that portion of the tape recording containing the moans of Officer Carrillo.

### B. *Failure to Suppress.*

■ Appellant argues that although the initial search of his house was proper, he withdrew his consent prior to the shooting and, thus, those portions of the recording made after consent was withdrawn should have been suppressed as product of an illegal search. *See* U.S. Const. amend IV; *see, e.g., United States v. Torres*, 663 F.2d 1019 (10th Cir.1981) (waiver of fourth amendment rights may be withdrawn); *Mason v. Pulliam*, 557 F.2d 426 (5th Cir.1977) (consent to search limited by right to reinvoke fourth amendment protections). Appellant also contends that he was in police custody and should have been given *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] He asserts he requested an attorney, the request was not honored, the police continued to question him, and those questions and his answers are on the tape. *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Accordingly, appellant concludes admission of the tape violated his rights as guaranteed by the fifth and sixth amendments to the United States Constitution.

Initially, we consider a question regarding appellate procedure. In *State v. Chamberlain*, 109 N.M. 173, 783 P.2d 483 (Ct.App.), *cert. denied*, 109 N.M. 154, 782 P.2d 1351 (1989), the court of appeals considered this issue as raised in Chamberlain's appeal of lesser convictions at his first trial. Appellant suggests that the doctrine of law of the case should not apply—the court of appeals decided the issue wrongly, and in the interest of justice, we should exercise our discretion to review the issue. *See Reese v. State*, 106 N.M. 505, 745 P.2d 1153 (1987).

In *Reese*, we reasserted our respect for and continuing adherence to the doctrine of the law of the case. Justice Ransom, specially concurring, emphasized our duty "to pursue a consistent course" when the law of the case is not " 'clearly erroneous.' " *Id.* at 507, 745 P.2d at 1155 (quoting *Sanchez v. Torres*, 38 N.M. 556, 567, 37 P.2d 805, 812 (1934)). We held: "Were we to adhere immutably to the law of the case, the defendant ... would be denied a fair trial," and we granted a new trial because " 'the doctrine should not be utilized to accomplish an obvious misjustice, or applied where the former appellate decision was clearly, palpably or manifestly erroneous or unjust.' " *Id.* (quoting 5 Am.Jur.2d *Appeal and Error* § 750, at 194 (1962)).

The court of appeals decision in *Chamberlain* is not clearly erroneous or manifestly unjust,[2] and we will not deviate from the law of the case doctrine under these circumstances. As determined by the court of appeals, assuming *arguendo* the illegality of the search, the evidence may have been excluded in a trial on charges regarding the beating of the prostitute, but not in the trial for murder of the police officer. *See* 109 N.M. at 175, 783 P.2d at 485; *see generally* 4 W.LaFave, *Search and Seizure* § 11.4(j), at 460–61 (2d ed. 1987) (in such circumstances, "no exploita-

---

**1.** ·Chamberlain relies on *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 1978–80, 100 L.Ed.2d 565 (1988), in support of his argument that he was in police custody. That case, however, while articulating a test not dissimilar to that applicable to determine whether a suspect is in custody for fifth or sixth amendment purposes, considered whether a suspect has been seized for *fourth amendment* purposes. *See Berkemer v. McCarty*, 468 U.S. 420, 436–37, 104 S.Ct. 3138, 3148–49, 82 L.Ed.2d 317 (1984).

**2.** In fact, if we were to reconsider these issues, we would decide them as did the court of appeals.

tion of the prior illegality is involved and ... the rationale of the exclusionary rule does not justify its extension").

 Similarly, the court of appeals' disposition of the fifth and sixth amendment issues was not manifestly unjust. *See* 109 N.M. at 176, 783 P.2d at 486. Chamberlain was not in police custody for fifth or sixth amendment purposes when the tape was made. *Miranda* warnings are required before statements made during custodial interrogation can be admitted against a defendant. 384 U.S. at 444, 86 S.Ct. at 1612. *Miranda* applies to questioning that occurs in a suspect's home after he has been arrested and is no longer free to go as he pleases. *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). Warnings are not required, however, every time the police interview a suspect, even though there may be coercive aspects to the questioning; a coercive environment requiring warnings occurs "only where there has been such a restriction on a person's freedom as to render him 'in custody.' " *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977); *see California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (questioning at police station of suspect not require warnings where no formal arrest or restraint on freedom; *Miranda* applies when suspect's freedom of action is curtailed to "degree associated with a formal arrest"). The relevant inquiry to determine whether an individual is in police custody is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Chamberlain was not subject to arrest while the officers conducted their search, nor was he subject to "the functional equivalent of formal arrest." *Id.*

## IV. JURY INSTRUCTIONS

Appellant asserts the court erred when it refused his requested jury instructions to support his theory that the police officer's

unconstitutional presence at his home constituted provocation so as to reduce murder to manslaughter. *See* NMSA 1978, §§ 30–2–1, –3 (Repl.Pamp.1984); *State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979), *overruled on other grounds; Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982); *Territory v. Lynch,* 18 N.M. 15, 133 P. 405 (1913).

 Appellant was entitled to instructions on his theories of the case that are supported by the evidence. *See State v. Venegas,* 96 N.M. 61, 628 P.2d 306 (1981). The court instructed the jury based on the appropriate Uniform Jury Instructions on voluntary manslaughter, provocation, and self-defense. Appellant was not entitled to more. *See Jackson v. State,* 100 N.M. 487, 489, 672 P.2d 660, 662 (1983) ("When a uniform jury instruction is provided for the elements of a crime, generally that instruction must be used without substantive modification."); *State v. Jennings,* 102 N.M. 89, 93, 691 P.2d 882, 886 (Ct.App.) ("A failure to instruct on the definition or amplification of the elements of a crime is not error."), *writ quashed,* 102 N.M. 88, 691 P.2d 881 (1984).

We are troubled, however, by appellant's reliance on *Territory v. Lynch,* 18 N.M. 15, 133 P. 405 (1913), as authority for his claim that he was entitled to instructions specifically relating to his theory that the search was illegal and, therefore, his killing of the officer was provoked and he had presented facts warranting instruction. Appellant theorizes that, after he withdrew consent to search and the police remained, their failure to leave constituted an unconstitutional search and was a matter of provocation that would reduce murder to manslaughter. *See* NMSA 1978, § 30–2–1, –3 (Repl.Pamp.1990).

We do not address whether, despite Chamberlain's withdrawn consent, the officers were lawfully on the premises. In this context, that question is irrelevant to whether Chamberlain can assert that the officers' presence constituted provocation to his attack and warranted special instruction to the jury.[3]

---

**3.** Moreover, our resolution of this issue demonstrates that the manslaughter instruction given

In *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979), the defendant killed a police officer and asserted a similar argument regarding provocation. We noted that, as a matter of law, the exercise of a legal right cannot constitute provocation such as to lower the grade of homicide and that a police officer "performing lawful acts in the discharge of his duty is engaged in the exercise of a legal right. Acts of a peace officer exercising his duties in a lawful manner cannot rise to the level of sufficient provocation." *Id.* at 100, 597 P.2d at 285. Appellant asserts, nonetheless, that his withdrawn consent made the officers' presence unlawful and withdrew this case from the purview of *Manus*.

In *State v. Doe*, 92 N.M. 100, 583 P.2d 464 (1978), this court rejected the argument that because an arrest was illegal, the arresting officer was not lawfully discharging his duties and, therefore, the defendant could not have violated a statute making unlawful a battery upon a police officer done while he is lawfully discharging his duties. *Id.* at 102, 583 P.2d at 466. We determined:

> Even if the arrest was illegal, we cannot condone the use of force in resisting every subsequent act made in good faith by a law enforcement officer.... Police officers acting in good faith, although mistakenly, should be relieved of the threat of physical harm.

> Self-help measures undertaken by a potential defendant who objects to the legality of the search can lead to violence and serious physical injury. The societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable search. One can reasonably be asked to submit peaceably and to take recourse in his legal remedies.

> We hold that a private citizen may not use force to resist a search by an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal.

by the court was not warranted by the facts of

*Id.* at 102–03, 583 P.2d at 466–67 (citations omitted).

We further noted that officers making an arrest "should not lose all ... authority if the arrest is subsequently judged to be unlawful," and determined that "[p]olice officers must be free to carry out their duties without being subjected to interference and physical harm." *Id.* at 103, 583 P.2d at 467. The test to determine whether a police officer is engaged in the performance of his lawful duties is whether the officer is acting as an agent within the scope of his duties, as opposed to engaging in a personal frolic. *Id.*

Even if Chamberlain had terminated his consent to search, and even if the officers would not have had probable cause to continue the search, Officer Carrillo was acting within the scope of his official duties when he continued the search. If the search had been illegal, there are remedies within the law to protect appellant's rights. Those remedies do not include resort to self-help measures. To the extent that it holds otherwise, *Lynch* is no longer good law and is hereby overruled.

## V. PROSECUTORIAL MISCONDUCT

Appellant asserts that certain comments made by the prosecution during closing argument warranted a mistrial and that it was error to deny the defense motion. The prosecution is allowed reasonable latitude in closing argument. *State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980). The district court has wide discretion to control closing argument, and there is no error absent an abuse of discretion or prejudice to defendant. *State v. Jett*, 111 N.M. 309, 314, 805 P.2d 78, 83 (1991). If the defense argument raises certain issues, those issues can be discussed by the prosecution. *Ruffino*, 94 N.M. at 503, 612 P.2d at 1314. The question on appeal is whether the argument served to deprive defendant of a fair trial. *Jett*, 111 N.M. at 314, 805 P.2d at 83.

Appellant raises several areas in which he contends the prosecution's comments constituted error: comments regarding de-

this case.

fense counsel; inferences on defendant's right to remain silent; statements regarding defendant's invocation of certain constitutional rights; reference to extraneous criminal acts; and incorrect statements of the law and facts. He points to over twenty statements that he claims were improper. Rather than address each contention individually, it suffices to say that our review of the record indicates that the argument was proper, and certainly, the prosecution's argument did not rise to the level of denying Chamberlain a fair trial. We address several of the contentions broadly to demonstrate the propriety of the state's argument.

 Initially, we narrow the scope of the inquiry by noting that many of the asserted errors were not objected to by the defense. Failure to make a timely objection to alleged improper argument bars review on appeal, unless the impropriety constitutes fundamental error. *State v. Clark*, 108 N.M. 288, 296, 772 P.2d 322, 330 (1989). At the end of the prosecution's closing argument, the defense objected to the argument and moved for a mistrial, contending purported misstatement of the law regarding investigative detention, improper assertions about counsel, and mischaracterization of defendant's case. We have reviewed the other assertions of error for fundamental error; not only did we not find such error, but we have found nothing improper in the state's argument and nothing that would have merited objection.[4]

Despite the objection to statements regarding "investigative detention," appellant has not cited us to the statements in the record, and we have not found any such statements. We have reviewed the statements regarding the officers' reasonable suspicion to continue to investigate. That argument was a proper statement of the

law; it was relevant, and was offered to rebut defendant's theory of the case. It was not error.

 We have discerned several statements that were directed at defense counsel. They did not impugn the defense personally, but rather were directed at rebutting defense argument. Similarly, the alleged mischaracterization of the defense's case was proper discussion of matters that were first raised by the defense.

Accordingly, we find no reversible error in this alleged prosecutorial misconduct.

## VI. JURY DELIBERATIONS

 Appellant asserts the court erred when it allowed the jury to return to a consideration of the first degree murder count after it sent a note to the court asking whether it could return to a higher count after going to a lower count. The court referred the jury to its instructions without elaboration.

The record does not disclose the substance of the jury's request. It does not disclose whether the jury had initially voted to acquit Chamberlain of the first degree murder charge. Review of SCRA 1986, 14–250 (uniform jury instruction on jury procedure for various degrees of homicide), demonstrates that, although the jury is instructed not to proceed to consideration of a lesser degree unless, "after reasonable deliberation," it does not agree on the defendant's guilt of the higher degree, the jury is not required to acquit the defendant of the higher degree before proceeding to the lesser degree. Appellant merely speculates on the deliberations of the jury when he asserts it had acquitted him of the higher charge.

---

4. The most serious of those contentions is that the state commented on defendant's right to remain silent. Defendant, however, did not assert that right—he testified at trial. The actual statement was that Chamberlain had two years to think about what he wanted to say. Appellant asserts this was a comment on his failure to testify at the first trial. He does not demonstrate, however, how this violated his right to a fair trial in the second trial, nor does he explain

that the door to this inquiry was first opened by the defendant himself when he noted the state's failure to cross examine. Moreover, the alleged comment was not "manifestly intended to be or ... of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify" so as to constitute improper prosecutorial comments. *Clark*, 108 N.M. at 302, 772 P.2d at 336.

■ Thus, we do not find error. Jurors are encouraged to consult with one another before reaching a conclusion. *See* SCRA 1986, 14–6008. The court is not permitted to interfere with the jury's discretion to deliberate. *See State v. McCarter*, 93 N.M. 708, 710, 604 P.2d 1242, 1244 (1980). In *State v. Castrillo*, 90 N.M. 608, 566 P.2d 1146 (1977), we considered the double jeopardy implications of the failure to return a verdict. We noted that "the approach taken by a jury in reaching a decision should not be called into question. We agree with the policy that discourages, and in most instances prohibits, any inquiry or intrusion into the jury room." *Id.* at 612, 566 P.2d at 1150. We also reflected on the meaning of the jury's consideration of a lesser offense, asserting that the jury must consider lesser offenses "[i]f the vote is not unanimous or if the vote is unanimous for acquittal." *Id.* at 611, 566 P.2d at 1149. We refuse to speculate on the meaning of the jury's consideration of the lesser offense in the present case. Because appellant has not demonstrated the jury acquitted him of first degree murder, we do not find error in its reconsideration of that question.

## VII. JURY EXPERIMENTATION

■ After the verdict was entered, defense counsel learned that the jury conducted experiments regarding a noise on the tape to determine whether it was the sound of Officer Carrillo's gun being withdrawn from his holster. Defendant moved for a new trial. The court denied the motion, ruling there was no improper experimentation and that a request for an evidentiary hearing was prohibited by SCRA 1986, 11–606.

In this case we do not consider evidence not properly admitted or experimentation based on facts or evidence not properly before the jury. *Cf. State v. Doe*, 101 N.M. 363, 683 P.2d 45 (Ct.App.1983), *cert. denied*, 101 N.M. 276, 681 P.2d 61 (1984) (newspaper story regarding witness intimidation read by juror); *Duran v. Lovato*, 99 N.M. 242, 656 P.2d 905 (Ct.App.1982), *cert. denied*, 99 N.M. 226, 656 P.2d 889 (1983) (jurors made independent speed tests during lunch break). The gun, holster, and tape—the instruments used by the jury to conduct the experiment—were admitted properly and were before the jury for its examination during deliberation. The question is whether it constituted improper experimentation when the jury tested the evidence before them in a way not discussed at trial and, if so, whether rule 606(B) allows the court to take evidence from jurors regarding its analysis of the evidence.

Appellant asserts that the experiment created new or extrinsic evidence that may have tainted the trial. The authorities cited, however, considered actual extrinsic evidence that came to the jury outside of the court and the trial process. *See, e.g., United States v. Hornung*, 848 F.2d 1040 (10th Cir.1988) (juror conversed with an acquaintance regarding the defendant); *Marino v. Vasquez*, 812 F.2d 499 (9th Cir.1987) (juror conducted test to verify testimony at home using her husband's gun); *Bayramoglu v. Estelle*, 806 F.2d 880 (9th Cir.1986) (juror called law librarian to discuss degrees of murder); *Jennings v. Oku*, 677 F.Supp. 1061 (D.Hawaii 1988) (jury conducted experiment out of court using a juror's car that was not in evidence and not even same model as the one at issue); *Durr v. Cook*, 442 F.Supp. 487 (W.D.La.1977) (juror reenacted crime outside of court); *Gorz v. State*, 749 P.2d 1349 (Alaska Ct.App.1988) (juror personally investigated amount of time to walk from crime scene to where defendant had been observed). Unlike the cited cases, however, the jury in the instant case did not consider evidence or statements that were not presented to the court.

In *State v. Dascenzo*, 30 N.M. 34, 226 P. 1099 (1924), this court considered a conviction for the sale of liquor. A bottle containing liquor taken from the appellant's premises was properly in evidence, and on appeal the court determined the propriety of the jury opening the bottle to smell its contents. This court held that the independent jury analysis was proper, stating:

No juror can receive evidence without the exercise of some of its senses. Jurors are permitted to exercise their sense of sight, in seeing the witnesses, includ-

ing the defendant, as they testify, and of observing their demeanor; they are also permitted to exercise their sense of hearing, in listening to the tone, as well as the steadiness or unsteadiness, of the voice, all for the purpose of deciding whether or not such witnesses are testifying truthfully or falsely. When physical things are introduced in evidence, jurors are permitted to look at them, to decide what they think concerning them. When liquor is introduced in evidence, jurors are allowed to look at it, and to take into consideration its color and appearance in deciding what they think it is. Again, if a bullet is introduced in evidence in a homicide case, and it becomes material to determine its size, caliber, or anything else concerning its physical appearance, jurors are permitted to look at it, and frequently take it in their hands and feel it, in order to determine what they think about it, and how its size and appearance harmonizes or conflicts with other evidence introduced in the case.

We can appreciate no distinction between these matters of common procedure and allowing jurors to smell liquor after it has been introduced in evidence. *By so doing, the juror did not gain independent evidence upon which to reach his conclusion, but simply tested the evidence already introduced, in order to properly determine its truth or probative value.* In deciding every case, jurors must necessarily take into consideration their knowledge and impressions founded upon experience in their everyday walks of life, and the fact that these things affect them in reaching their verdict cannot be reversible error, because, indeed, jurors without possessing such knowledge and impressions could not be had. After the liquor in this character of a case has been received in evidence, to deny the jurors the right to look upon it, smell of it, and take into consideration its appearance and odor in determining what it is, results in closing their eyes against the acquisition of the truth.

*Id.* at 36–37, 226 P. at 1100 (emphasis added).

That case, in relevant part, is virtually indistinguishable from the case at bar. The evidence—the gun, the holster, and the tape—was properly before the jury; the jury used its experience and senses to examine that evidence. This conclusion accords with contemporary authority that has considered this question. *See, e.g. People v. Kurena,* 87 Ill.App.3d 771, 43 Ill.Dec. 277, 410 N.E.2d 277 (1980) (in murder trial where victim stabbed to death, jurors properly fashioned cardboard knife with which they evaluated evidence presented at trial because the actual knife had been admitted into evidence and the experiments had been attempts to verify the testimony); *State v. Ashworth,* 231 Kan. 623, 647 P.2d 1281 (1982) (jury properly conducted experiment using exhibits submitted to it to test veracity of testimony); *State v. Thompson,* 164 Mont. 415, 524 P.2d 1115 (1974) (jury may use physical evidence in conjunction with testimony to determine credibility as long as it acts in accordance with testimony and no new facts discovered; juror experiment with revolver not error); *see generally* Annotation, *Propriety of Juror's Tests or Experiments in Jury Room,* 31 A.L.R.4th 566 (1984). Although potential error may occur if an experiment creates a new evidentiary fact outside of the record for the jury, *see Simon v. Kuhlman,* 549 F.Supp. 1202, 1206 (S.D.N.Y.1982); *State v. Asherman,* 193 Conn. 695, 741, 478 A.2d 227, 254 (1984), the jury must be allowed latitude to evaluate evidence and to use its experience to deliberate. *United States v. Avery,* 717 F.2d 1020, 1026 (6th Cir.1983), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1683, 80 L.Ed.2d 157 (1984) (upholding conviction when the jury performed experiment using material entered into evidence).

We find no distinction based on appellant's assertion that evidence had not been presented on the exact issue of whether the noise on the tape in fact had been caused by Carrillo pulling the gun from the holster. Apparently experts had not been able to ascertain whether the noise on the tape resulted from the officer pulling his weapon. The jury is not bound by expert opinion. *State v. McGhee,* 103 N.M. 100,

103, 703 P.2d 877, 880 (1985). Moreover, in evaluating the evidence presented, the jury is given latitude to use its judgment, and although no testimony had been elicited on the exact issue, the background information was all properly before the jury. In support of his claim of self-defense, defendant claimed that Officer Carrillo had pulled his weapon prior to being shot; the state attempted to prove the weapon had not been drawn until after the initial shooting. Furthermore, evidence had been presented at trial regarding how the pistol and holster functioned, and certain testimony raised the inference that the noise on the tape may have been caused by the gun being pulled from the holster. The jury was required to evaluate these conflicting versions of the truth, and it properly used the evidence before it to perform its duty. *See United States v. Hawkins*, 595 F.2d 751, 753 (D.C.Cir.1978), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979).

Rule 606(B) deals with the competency of jurors as witnesses. That rule prohibits a juror from testifying as a witness regarding jury deliberations, "except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." SCRA 1986, 11–606(B). Because no new evidentiary facts went before the jury during deliberations, testimony could not be elicited from the jury regarding its deliberations. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 606[04] (1988) (Rule 606(B) bars jurors from testifying regarding the processes by which a verdict was reached, although it does not prohibit testimony on experiments that create knowledge that has not been obtained through evidence).

---

**5.** *Keenan v. Superior Court*, 31 Cal.3d 424, 640 P.2d 108, 180 Cal.Rptr. 489 (1982), cited by appellant, is inapposite to the case before us, both in its procedural posture (it was a mandamus review) and its legal authority (it reviewed California statute applying an abuse of discretion standard).

## VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant raises nine points that he contends violated his right to the effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution.

 "The standard for ineffective assistance of counsel in New Mexico is whether defense counsel exercised the skill of a reasonably competent attorney. The defendant bears the burden of demonstrating both the incompetence of his attorney and resulting prejudice, and absent such a showing counsel is presumed competent." *State v. Jett*, 111 N.M. 309, 315, 805 P.2d 78, 84 (1991) (citations omitted). It is not sufficient that the defendant generally complains of substandard performance by counsel; the defendant must point to acts or omissions by counsel that he complains fall below the standard of reasonable competence. *State v. Brazeal*, 109 N.M. 752, 757, 790 P.2d 1033, 1038 (Ct.App.), *cert. denied*, 109 N.M. 631, 788 P.2d 931 (1990). In reviewing a claim of ineffective assistance of counsel, the court will not second guess trial tactics and strategy of counsel: "Bad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel." *State v. Orona*, 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982); *see State v. Newman*, 109 N.M. 263, 268, 784 P.2d 1006, 1011 (Ct.App.), *cert. denied*, 109 N.M. 262, 784 P.2d 1005 (1989).

 Appellant first asserts that one attorney was inadequate to provide a defense in this case and that the public defender and the attorney below violated his rights by failing to provide a second attorney.[5] Initially, we note that, while it is uncontestable that a criminal defendant is entitled to representation, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963),[6] we have not been directed to, nor have we found, authority requiring as a

---

**6.** This right is also guaranteed by statute. *See* NMSA 1978, §§ 31–15–1 to –12, 31–16–1 to –10 (Repl.Pamp.1984 and Cum.Supp.1990).

constitutional minimum the appointment of more than one attorney. Moreover, appellant's contention can only have merit if he can demonstrate that the counsel provided was unable to provide reasonably competent representation and that appellant was prejudiced thereby. This claim thus appears more reasonably considered in the context of specific claims of inadequate representation, which we deal with below. We refuse to hold that more than one attorney must be appointed to represent an indigent defendant based merely on the claim that a case is complex and a conviction would carry serious consequences to the defendant.

■■■ Appellant's second and third claims are that counsel provided ineffective assistance by failing to hire a ballistics expert and an audio forensics expert. Our review indicates that these were matters of trial strategy and did not constitute ineffective assistance. The ballistics evidence put on by the prosecution was imprecise and subject to vigorous cross examination. The defense made a tactical decision to limit the amount and specificity of the evidence in this area. It also appears that the defense, in Chamberlain's first trial, did hire an audio expert; that expert's analysis was available to defense counsel in the second trial. Moreover, the audio enhancement was inconclusive, and except for his mere assertions of prejudice, appellant has not shown that further analysis of the tape would be fruitful.

In *State v. Vigil*, 110 N.M. 254, 258, 794 P.2d 728, 732 (1990), we rejected a similar contention regarding ineffective assistance of counsel when the defense attorney failed to use expert testimony, stating:

> We will not substitute our own judgment over trial tactics for the judgment of defense counsel when it is not clear that the defendant was deprived of a meritorious defense because the judgment of defense counsel was without excuse or justification.

We do not believe that defendant was deprived of a defense because of defense counsel's strategy. This conclusion is bolstered by appellant's inability to demonstrate prejudice, or what an expert could have presented to further his defense.

Appellant claims he was denied effective assistance of counsel because his attorney visited only once prior to trial. We agree with *State v. Brusenhan*, 78 N.M. 764, 438 P.2d 174 (Ct.App.1968), that the amount of time counsel spent with defendant, without more, does not constitute ineffective assistance of counsel.

Appellant asserts trial counsel provided ineffective assistance because on two occasions counsel failed to provide for appellant's presence at hearings. The record, however, affirmatively indicates that appellant was present at the hearings.

Appellant has raised several other claims of ineffective assistance. We have examined those arguments, and find them devoid of merit. The alleged bases for ineffective assistance resulted from tactical decisions and have not been demonstrated to have prejudiced appellant.

As is apparent from the foregoing discussion, appellant's claim of cumulative argument must fail.

In accordance with our opinion, we affirm the judgment of the district court.

IT IS SO ORDERED.

SOSA, C.J., concurs.

RANSOM, J. (specially concurring).

RANSOM, Justice (specially concurring).

I specially concur to voice two reasons why I do not believe that the majority of this panel should speak for the Court on the soundness of the common-law principle, articulated in *Territory v. Lynch*, 18 N.M. 15, 133 P. 405 (1913), that an illegal or unlawful arrest, under certain circumstances, may represent adequate provocation of violence to warrant the giving of a manslaughter instruction when the defendant has been charged with murder.

First, the manslaughter instruction based upon provocation *was given* in this case, and the jury was *not* instructed that the conduct of the officers was lawful and could not constitute provocation. It seems that Chamberlain was in no way prejudiced

in his ability to argue that he was provoked by the refusal of the officers to leave his home when he revoked his permission to be there. It would have been helpful to Chamberlain's case for the court to have instructed the jury that the presence of the officers was unlawful, if that were the case, but for the court to have given such an instruction it would have had to decide collateral legal issues such as probable cause to believe that a crime had been committed and the existence of exigent circumstances to justify the warrantless search. I would approach the question before us as being whether it is error for the court to refuse to decide and/or instruct on such a collateral issue, or whether the court correctly left the entire matter of provocation for full argument to the jury on the facts as presented. Consequently, I find it unnecessary to decide the validity of *Lynch.*

Second, even were I to reach the issue, I would find the *Lynch* rule inapposite here. The *Lynch* line of cases follows an established common-law rule that an illegal *arrest,* that is an arrest without probable cause, may constitute sufficient provocation to justify giving a manslaughter instruction. There is scant authority to suggest that an illegal *search* of one's home (a trespass), represents adequate provocation to warrant the instruction. *See* 40 C.J.S. *Homicide* § 85(b) (1991) (illegal arrest); *id.* § 86 (offense against property). It would seem unnecessary to address the continuing validity of the former common-law rule involving illegal arrest in the context of this case. Also, New Mexico never has followed a rule that the fact of an illegal arrest automatically reduces murder to manslaughter; like most other jurisdictions the defendant must still prove he in fact was filled with passion aroused by the illegal arrest sufficient to meet the usual provocation tests. *See Lynch,* 18 N.M. at 33, 133 P. at 409 ("[I]f in fact the outrage of an attempted illegal arrest has not excited the passions, a killing in cold blood will be murder.").[1]

Indeed, I believe that unlawful conduct of an arresting law enforcement officer, under certain circumstances, may constitute adequate provocation to warrant a conviction for voluntary manslaughter rather than murder. I would not agree that the test of whether the manslaughter instruction should be given is merely whether the officer was "acting within the scope of his official duties" as the majority of this panel indicates. This would seem to be the net effect of overruling *Lynch,* and adopting in this murder/manslaughter case, the test announced in *State v. Doe,* 92 N.M. 100, 583 P.2d 464 (1978), to determine if an officer is engaged in the lawful discharge of his duties for purposes of NMSA 1953, Section 40A–22–23 (battery upon a police officer).

I find significant the distinction between the principles of justification or excuse rejected in *Doe* and the principle at work in *Lynch* which is related to mens rea or "the character of the homicide." *See Lynch,* 18 N.M. at 33, 133 P. at 409. In *Doe* the Court determined that the fact of illegality of an arrest is no defense to a charge of battery against a police officer. In effect, this ruling abolished the common-law right to resist with reasonable force an illegal arrest. *See generally* Annotation, *Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest* 44 A.L.R.3d 1078 (1972). However, I am of the opinion that the rationale which denies resistance on the part of a citizen to an illegal or unlawful arrest should not determine the character of a homicide (identified by mens rea) that may grow out of such an arrest. I am not

---

1. In connection with the propriety and character of jury instructions to be given when provocation is put in issue by unlawful conduct on the part of arresting officers, Professor LaFave observes the circumstances may require more than the mere fact of illegality:

 If an illegal arrest may be a reasonable provocation in some circumstances, it would seem that these circumstances should include the fact that the defendant knew or at least believed that his arrest was illegal; and perhaps that the defendant knew or believed he was innocent of the crime for which he was arrested, since an innocent man would more reasonably be provoked by an illegal arrest than a guilty one.

 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 7.10(b)(4) (1986).

inclined to overrule *Lynch* to the extent it is inconsistent with the rule announced in *Doe*. Additionally, some forms of unlawful conduct on the part of police officers, such as the excessive use of force, in performance of their official duties, as in making an arrest, any arrest, may certainly give rise to adequate provocation. Use of the simple test in *Doe* (acting within scope of official duties) would not seem to take this into account and easily might be misunderstood on this point.